Hillsborough
No. 84-545

PIERRE ROUSSEAU

v.

MARIS ESHLEMAN

October 3, 1986

*Hamblett & Kerrigan P.A.*, of Nashua (*John P. Griffith* and *Linda J. Argenti* on the brief, and *Mr. Griffith* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Exeter (*Peter F. Kearns* on the brief and orally), for the defendant.

BROCK, J.   In this case of first impression, we must determine whether attorneys in this State are exempt from the application of the consumer protection act, RSA chapter 358-A. The defendant attorney, Maris Eshleman, appeals from the Trial Court's (*C. Flynn, J.*) denial of his post-trial motions to set aside the verdict, for remit-

titur, and to vacate judgment. The plaintiff cross appeals from the court's disallowance of enhanced damages. Concluding that the trial court erred, we remand for a new trial.

During the fall of 1980, the plaintiff was considering the purchase of five residential duplexes and sought the advice of the defendant based on the recommendation of someone with whom the plaintiff had worked. The defendant recommended investment in commercial real estate, rather than residential real estate, and the plaintiff requested that the defendant gather information concerning potential commercial real estate investments. The defendant proposed a legal fee of one percent of the purchase price for the closing of a sale on any property, and one to two percent of the purchase price for assistance in securing financing. The defendant informed the plaintiff that the foregoing contingent fee was the usual and customary fee for attorneys practicing in the area of real estate law.

In December 1980, the plaintiff decided to purchase a small shopping center in Merrimack, at the suggestion of the defendant. At the time, two of the six stores in the center were vacant. The defendant prepared a letter of intent, and the plaintiff entered into a purchase and sale agreement. The defendant informed the plaintiff that the mortgage on the property was assumable by the buyer once the property was purchased; in addition, the seller eventually took back a second mortgage.

At trial, the defendant testified that at some point before the closing, he learned that the mortgage was not assumable, and that the note instead became a demand note due and payable at the option of the bank upon the plaintiff's purchase of the property. The plaintiff did not discover this until after the April 1981 closing. The plaintiff owned the shopping center until the early fall of 1981, when he decided that he could no longer afford the monthly payments on the property. In February 1982, the former owner of the property agreed to take it back from the plaintiff, who sustained a substantial loss on his investment.

Later that year, the plaintiff filed suit against attorney Eshleman, alleging three causes of action: legal malpractice; negligent misrepresentation; and unfair and deceptive trade practices, in violation of the consumer protection act, RSA chapter 358-A. The plaintiff sought damages in the sum of $200,000 and claimed that because the defendant willfully and knowingly violated the consumer protection act, the plaintiff was entitled to treble damages pursuant to RSA 358-A:10.

At the close of the plaintiff's case, the defendant moved for a nonsuit on the consumer protection act count. The trial court denied the

motion, expressing its uncertainty about whether the practice of law was exempt from the consumer protection act, and permitted the consumer protection act claim to go to the jury, acting in an advisory capacity. The jury found that (1) the defendant was negligent and his negligence proximately caused a loss to plaintiff; (2) the plaintiff was not negligent; (3) the defendant committed unfair and deceptive trade practices in violation of the consumer protection act; (4) the plaintiff was entitled to damages of $103,186.50; and (5) the defendant's actions constituted a willful and knowing violation of the consumer protection act.

The defendant moved to set aside the verdict, to vacate judgment, and for remittitur; and the plaintiff moved for judgment and sought treble damages, attorney's fees, expert witness fees, and compound interest. The trial court, in its rulings on these motions, ruled that the consumer protection act applied to an attorney who has advertised services to the public, and ruled that RSA 358-A:10, the provision of the act that concerns damages in private actions, applied as it existed prior to August 1981, when it was amended to provide for double or treble damages. *See* Laws 1981, 243:1. The trial court also ruled that the findings of the jury were reasonable, and hence denied all of the defendant's motions. The plaintiff's motions were granted, except to the extent of the request for treble damages. The trial court awarded damages based on the jury's verdict, plus exemplary damages in the amount of $100 and attorney's fees in the amount of $34,428.83.

In this appeal, the defendant contends that (1) attorneys practicing law in this State are not subject to the provisions of the consumer protection act; (2) even if attorneys are subject to liability under the consumer protection act, the defendant's actions did not violate the act; (3) the submission to the jury of questions concerning the consumer protection act was prejudicial to the defendant and requires a new trial; (4) the trial court improperly excluded from evidence the plaintiff's 1981 federal tax return; and (5) the jury's finding of no comparative negligence on the part of the plaintiff was against the weight of the evidence. The plaintiff, in his cross appeal, asserts that he is entitled to treble damages under the current version of RSA 358-A:10.

We begin by considering whether the practice of law falls within the scope of the consumer protection act. The act "is a comprehensive statute designed to regulate business practices for consumer protection by making it unlawful for persons engaged in trade or commerce to use various methods of unfair competition and

deceptive business practices." *Chase v. Dorais*, 122 N.H. 600, 601, 448 A.2d 390, 391 (1982). It provides that "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2.

The consumer protection act contains no language expressly exempting law, medicine or other learned professions from its reach. However, the act exempts "[t]rade or commerce otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of this state or of the United States." RSA 358-A:3, I. Presumably, physicians would be considered exempt from the act because they are subject to licensing and regulation by a board of registration under RSA 329:2 (1984, Supp. 1985, Laws 1986, 219:1). The same would be true of electricians, RSA 319-C:4 (1984 and Supp. 1985), and plumbers, RSA 329-A:3 (1984 and Supp. 1985). We must decide whether under RSA 358-A:3 attorneys enjoy a similar exemption from the provisions of the act or whether the legislature intended that they be subject to the act.

Admission to the practice of law and regulation of the conduct of attorneys in this State has been dealt with as an area of shared responsibility between the legislative and judicial branches of government. *See* RSA 490:4; RSA chapter 311; N.H. CONST. pt. II, art. 73-a (Supp 1985). Pursuant to its statutory and constitutional authority, this court not only has established an integrated bar association, membership in which is required as a condition of practicing law in this State, *see In re Unified New Hampshire Bar*, 112 N.H. 204, 291 A.2d 600 (1972), but also has established a professional conduct committee which has responsibility for regulating attorney conduct.

▮ The professional conduct committee of this court is, in our view, a regulatory board acting under statutory (and constitutional) authority of this State within the meaning of RSA 358-A:3, I. In view of the practical problems that may attend application of the consumer protection act in this area of shared constitutional responsibility, we are, absent careful legislative consideration and a clearly expressed legislative intent, reluctant to interpret the statute before us otherwise.

▮ The defendant next asserts that the submission to and consideration by the jury of questions concerning the consumer protection act requires a new trial. As a procedural matter, the plaintiff argues that the defendant failed to preserve this issue. However, our review of the transcript of the bench conference cited by both par-

ties indicates that the general issue of whether a civil action under the consumer protection act could properly be put to a jury was both raised and excepted to. We read this objection as encompassing the sub-issue of whether the objectionable questions could themselves be put to the jury. On the merits, we agree with the defendant's argument, in that their submission to the jury may very well have resulted in prejudice to the defendant, and thus did not constitute harmless error. *See Winslow v. Dietlin*, 100 N.H. 147, 121 A.2d 573 (1956) (court did not err in submitting issue to jury when such could not have affected verdict). On this basis, the defendant must be afforded a new trial on the legal malpractice and negligent misrepresentation claims against him. As we have held that the statute in its present form exempts attorneys from its application, we have no occasion to consider the plaintiff's argument concerning enhanced damages.

The defendant also challenges the exclusion from evidence of the plaintiff's income tax return, and the jury's finding of no comparative negligence on the part of the plaintiff. Because we remand for a new trial, we need not consider these arguments. Accordingly, we remand the case for a new trial.

*Reversed and remanded.*

JOHNSON, J., with whom BATCHELDER, J., joined, dissented; the others concurred.

JOHNSON, J., with whom BATCHELDER, J., joins, dissenting: The complex questions at issue in this case involve the importance of protecting consumers from unfair and deceptive business practices, and the judgment whether the remedy for such practices extends to attorneys, who historically have enjoyed broad immunity. The majority holding exempts attorneys from the consumer protection act, RSA chapter 358-A. I believe that today's holding misinterprets the role of the professional conduct committee and the purposes of consumer protection law. I therefore respectfully dissent from the majority holding.

The consumer protection act contains no language expressly exempting attorneys from the purview of RSA chapter 358-A. The statute explicitly provides that "[i]t shall be unlawful for *any person* to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2 (emphasis added). It is designed to protect consumers from a broad range of unfair and deceptive business practices, and thus a limited interpretation of the act's application would

frustrate the act's underlying policy concerns. I do not believe that blanket immunity for attorneys was within the contemplation of the legislature.

The act does exempt "[t]rade or commerce otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of this state or of the United States." RSA 358-A:3, I. The majority holds that this court, through its professional conduct committee, is a "regulatory board acting under the statutory (and constitutional) authority of this State . . . ." To exempt the activities of attorneys from the consumer protection act under this theory ignores the plain meaning of the exemption language. Our authority to regulate the practice of law is inherent in our constitutional powers. Neither RSA 490:4 nor RSA chapter 311, nor the New Hampshire Constitution part II, article 73-a, cited by the majority, transforms this court or its committees into a "regulatory board or officer" within the meaning of RSA 358-A:3, I. The judiciary is simply not under the authority of the legislature. The judiciary is a separate, independent branch of government. Neither this court nor the professional conduct committee is a "regulatory board or officer acting under *statutory* authority of this state or of the United States," and hence RSA 358-A:3, I, does not require that attorneys be exempt from the act. *Cf., e.g., Heslin v. Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 516, 461 A.2d 938, 941 (1983) (exemption contained in CONN. GEN. STAT. ANN. § 42-110c(a)(1) (West Supp. 1986)); *Frahm v. Urkovich*, 113 Ill. App. 3d 580, 447 N.E.2d 1007 (1983) (exemption contained in ILL. REV. STAT. ch. 121 1/2, § 270b(1) (Smith-Hurd Supp. 1986)); *Short v. Demopolis*, 103 Wash. 2d 52, 61, 691 P.2d 163, 168 (1984) (exemption contained in WASH. REV. CODE § 19.86.170 (1985)).

The act states that "'[t]rade' and 'commerce' shall include the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state." RSA 358-A:1, II.

Given the conclusion that the consumer protection act does not exempt attorneys, the first issue to examine is whether "trade or commerce" encompasses the practice of law. The term "trade" has a limited scope in this context, which originated with *The [Schooner] Nymph*, 18 F. Cas. 506, 507 (C.C.D. Me. 1834) (No. 10,388), where Justice Story stated that "[w]herever any occupation, employment, or business is carried on for the purpose of profit, or gain, or a livelihood, not in the liberal arts or in the learned professions, it is con-

stantly called a trade." This definition led to the recognition of a "learned profession" exemption to the antitrust laws in early United States Supreme Court cases. *See* Annot., 39 A.L.R. FED. 774, 777 (1978). The three learned professions traditionally have been theology, law, and medicine. *See State Bar of Arizona v. Arizona Land Title & Trust Co.*, 90 Ariz. 76, 83, 366 P.2d 1, 6 (1961).

The consumer protection act provides that "in any action or prosecution under this chapter, the courts may be guided by the interpretation and construction given Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), by the Federal Trade Commission and the federal courts." RSA 358-A:13. Federal courts have considered three types of cases concerning the learned profession exemption: (1) where the activities of professionals directly interfere with the commercial activities of nonprofessionals; (2) where the activities of professionals directly interfere with the activities of other members of the profession; and (3) a combination of both. Annot., 39 A.L.R. FED. 774, 779 (1978). In the first case, no professional exemption exists. *Id.* at 779–80. In the second case, the courts have recognized two categories of professional activity: "those pertaining to professional ethics, practices, qualifications, and standards," and "those pertaining to the economic protection of the profession as a whole, or particular segments thereof, the so-called 'business' aspects." *Id.* at 780 (footnote omitted). In determining the scope of the learned profession exemption, it has become clear that "not all activities of the learned professions can be found to be wholly 'commercial' or wholly 'noncommercial.'" *Id.*

The distinction between the commercial and noncommercial activities of a profession has been developed in several federal cases. *See, e.g., Marjorie Webster Jr. College, Inc. v. Middle States Ass'n of Colleges & Secondary Schools, Inc.*, 432 F.2d 650, 654 (D.C. Cir.), *cert. denied*, 400 U.S. 965 (1970); *Selman v. Harvard Medical School*, 494 F. Supp. 603, 621 (S.D.N.Y.), *aff'd mem.*, 636 F.2d 1204 (2d Cir. 1980). A commercial motive is required, according to this line of reasoning, in order to bring the professional activity within the purview of the Sherman Act. In *Marjorie Webster, supra* at 654 (footnote omitted), the United States Court of Appeals for the District of Columbia Circuit stated that "an incidental restraint of trade, absent an intent or purpose to affect the commercial aspects of the profession, is not sufficient to warrant application of the antitrust laws." The court also found that "the proscriptions of the Sherman Act were 'tailored . . . for the business world,' not for the noncommercial aspects of the . . . learned professions." *Id.* at 654 (footnotes omitted).

In *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975), the United States Supreme Court addressed the question whether a restraint of "trade or commerce" violated the Sherman Act when the restraint concerned the activities of members of a learned profession. The Court held that a minimum fee schedule, published by a county bar association and enforced by the State Bar, violated section 1 of the Sherman Act, 15 U.S.C. § 1 (1982). The Court stated that "[i]t is no disparagement of the practice of the law as a profession to acknowledge that it has [a] business aspect. . . . In the modern world it cannot be denied that the activities of lawyers play an important part in commercial intercourse, and that anticompetitive activities by lawyers may exert a restraint on commerce." 421 U.S. at 788 (footnote omitted). No commercial *motive* was explicitly required to bring the commercial activities of attorneys within the scope of the Sherman Act. Although the Court stated that "[i]t would be unrealistic to view the practice of professions as interchangeable with other business activities," *id.* at 788 n.17, in a later case the Court asserted that this statement "cannot be read as fashioning a broad exemption . . . for learned professions." *National Society of Professional Engineers v. United States*, 435 U.S. 679, 696 (1978).

The United States Supreme Court further limited the learned profession exemption by recognizing the commercial aspects of the legal profession in *Bates v. State Bar of Arizona,*, 433 U.S. 350 (1977). In *Bates*, the Court held that the ban against price advertising by attorneys conflicted with the first amendment, stating, however, that false, deceptive, or misleading advertising is subject to restraint. *Id.* at 383–84. The Court stated that "the belief that lawyers are somehow 'above' trade has become an anachronism." *Id.* at 371–72. The concept of a blanket exemption to the antitrust laws for the learned professions thus has become untenable.

Courts often look to cases decided under the antitrust laws in construing cases under the Federal Trade Commission Act. *See, e.g., American Cyanamid Company v. F.T.C.*, 363 F.2d 757, 770 (6th Cir. 1966). In light of the federal courts' rejection of special treatment for the professions in the antitrust context, State courts are examining the scope of the various State consumer protection laws. *See generally* Lovett, *State Deceptive Trade Practice Legislation*, 46 TUL. L. REV. 724 (1971) (comparison of State consumer protection statutes). Other State courts that have addressed the issue whether their consumer protection act applies to the conduct of attorneys have held that the act applies to the activities of attorneys, or have refrained from enacting a blanket exemption for attorneys. *See, e.g., Heslin v. Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn.

510, 461 A.2d 938 (1983) (provision of legal services constitutes an activity in trade or commerce under consumer protection act); *Ivey, Barnum & O'Mara v. Indian Harbor Properties, Inc.*, 190 Conn. 538, 461 A.2d 1369 (1983) (conduct in question did not fall within scope of consumer protection act because no effect on a recognizable public interest demonstrated) (public interest nexus requirement subsequently eliminated by 1984 Conn. Acts 468 (Reg. Sess.) (codified at CONN. GEN. STAT. ANN. § 42-110g(a) (West Supp. 1986)); *Frahm v. Urkovich*, 113 Ill. App. 3d 580, 447 N.E.2d 1007 (App. Ct. 1983) (consumer protection act does not apply to the "actual practice of law"); *Reed v. Allison & Perrone*, 376 So. 2d 1067 (La. Ct. App. 1979) (advertising by attorneys constitutes trade or commerce within scope of consumer protection act); *Lucas v. Nesbitt*, 653 S.W.2d 883 (Tex. Ct. App. 1983) (deceptive trade practices act applies to lawyers, but no evidence that conduct in question violated the act); *Short v. Demopolis*, 103 Wash. 2d 52, 691 P.2d 163 (1984) (consumer protection act applies to the commercial activities of attorneys).

In considering the application of our consumer protection act to the practice of law, it is important to note that the act is intended to protect the public from unfair and deceptive practices. *See Chase v. Dorais*, 122 N.H. 600, 601, 448 A.2d 390, 391 (1982). The public is protected generally from attorney misconduct by this court's supervision of attorneys. "This court has inherent and statutory power to supervise the conduct of attorneys for the protection of the public and the maintenance of public confidence in the bar as a whole." *Mussman's Case*, 111 N.H. 402, 411, 286 A.2d 614, 619 (1971) (citation omitted); RSA 311:8; *see also Ricker's Petition*, 66 N.H. 207, 29 A. 559 (1890). We have held that "[t]he public is entitled to ample protection against the danger of any abuse of the great powers of the office which the public . . . has conferred upon [attorneys]." *Delano's Case*, 58 N.H. 5, 6 (1876). However, the supervision of attorneys by this court or its professional conduct committee does not afford relief to the injured client. "The injured client can take little comfort from the fact that the wrongdoer has been reprimanded or suspended or stripped of the right to practice his profession." 10 GONZ. L. REV. at 437.

The remedy of a malpractice action exists to protect individual clients from an attorney's negligence. An attorney who represents a client must use "such skill, care, and diligence as [members] of the legal profession commonly possess and exercise in . . . matters of professional employment." *Savings Bank v. Ward*, 100 U.S. 195, 200 (1879). Malpractice liability is based upon the failure to use due care in rendering legal services, and a plaintiff injured by legal malprac-

tice is entitled to compensation for that injury. *See* Wade, *The Attorney's Liability for Negligence*, 12 VAND. L. REV 755 (1959).

The consumer protection act adds further protection for clients from services that are marketed, sold, and distributed in a way that is unfair or deceptive to the consumer. Unlike the malpractice cause of action, the statute does not include any general requirement of fault, and liability can result regardless of the degree of care used in providing the service. Unlike the cause of action for fraud, liability can be imposed even if the defendant does not act intentionally. *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703–04, 322 N.E.2d 768, 779 (1975).

Blanket application of the consumer protection act to the practice of law, therefore, effectively would alter the standard of care owed by lawyers to their clients. If the challenged practice actually results in deception, an attorney would be liable whether or not due care was exercised.

Attorneys never have been required to insure the correctness of their opinions, and any policy of strict liability would make it virtually impossible for the attorney to function in the traditional role of legal counselor. Comment, *Applicability of the Texas Deceptive Trade Practices Act to Attorneys*, 30 BAYLOR L. REV. 65, 72 (1978). "The common law recognizes that the law is often vague and unsettled, and a multiplicity of legal opinions are possible, especially when dealing with borderline cases." *Id.* Imposition of liability under the consumer protection act for acts performed in the traditional role of legal counselor would require an attorney to guarantee far more than due care in providing legal services. This court has read "unfair or deceptive act or practice in the conduct of any trade or commerce" to apply to those acts or practices which are perpetrated in a business context. *Chase v. Dorais*, 122 N.H. at 602, 448 A.2d at 392. I do not believe that the act was intended to include the noncommercial aspects of the legal profession under the rubric of "trade or commerce."

To the extent that the concept of a learned profession exemption maintains vitality, therefore, it encompasses the noncommercial practices of attorneys, and I would hold that the activities of attorneys which constitute the "actual practice of law" are beyond the reach of the consumer protection act. To define precisely the "actual practice of law," however, is a difficult endeavor. Many courts have declined to formulate a single definition, using only the "wilderness of single instances" as guides in determining what constitutes the practice of law. Note, *The Lawyer's Exclusive Province*, 83 U. PA. L.

REV. 357, 358 (1935); *see also, e.g., Automobile Club of Missouri v. Hoffmeister*, 338 S.W.2d 348 (Mo. Ct. App 1960); *Sparkman v. State Board of Bar Examiners*, 77 N.M. 551, 425 P.2d 313 (1967).

The American Bar Association has described the practice of law as relating to "the rendition of services for others that call for the professional judgment of a lawyer. The essence of the professional judgment of a lawyer is [an] educated ability to relate the general body and philosophy of law to a specific legal problem of a client . . . ." MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 3-5 (1980).

The practice of law is not confined to litigation in the courts, but includes the giving of legal advice and counsel, and the preparation of legal instruments by which legal rights are defined or secured, whether or not such matters are or may be the subject of litigation. Annot., 151 A.L.R. 781, 782 (1944). "In the broad sense, the determination of what services one not duly admitted to the practice of law may perform depends upon whether the services require specialized legal training, knowledge and skill . . . ." *Id.* I would hold that any of an attorney's activities which constitute the "actual practice of law," requiring the professional judgment of an attorney based upon his or her legal knowledge and skill, are exempt from our consumer protection act.

Attorneys would still be subject to liability under the consumer protection act, however, to the extent that they engage in the commercial aspects of the practice of law. The public policies that underlie the fault requirement in malpractice cases are based upon the need to allow attorneys to use their professional judgment in counseling and advising clients. These policies are not applicable when attorneys engage in commercial activities where they do not function as counselors in the traditional sense, and I see no reason to exempt the commercial aspects of the legal profession from the act. Moreover, such an exemption denies an adequate remedy to consumers who have suffered loss through an unfair or deceptive commercial act of an attorney. Malpractice actions require plaintiffs to prove that an attorney failed to use due care, and most unfair or deceptive trade practices do not involve questions of negligence. Furthermore, malpractice actions involve lengthy and expensive litigation which may deter such plaintiffs from asserting their rights. *See generally* Note, *Tolling The Death Knell On The "Learned Profession" Immunity Under The Consumer Protection Act: Short v. Demopolis*, 21 WILLAMETTE L.J. 899, 900–01 (1985). Thus, I would hold, guided by federal law, *see* RSA 358-A:13, that the commercial aspects of the legal profession constitute activities in "trade or commerce" within the meaning of the act. RSA 358-A:1, II.

In a recent case addressing the application of the consumer protection act to attorneys, the Supreme Court of Washington adopted a commercial—noncommercial distinction. *Short v. Demopolis*, 103 Wash. 2d at 52, 691 P.2d at 163. The "entrepreneurial" or commercial aspects of the legal profession were described as the way in which "the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients." *Id.* at 61, 691 P.2d at 168. This is a sensible definition, one which includes deceptive representations by attorneys, both to the public (through advertising) and to specific clients or prospective clients, within the scope of the act. "By allowing a client to recover damages caused by deceptive advertising, the public will be assured that it can rely on the representations made in attorney advertisements." *Id.* at 68, 691 P.2d at 173 (Dore, J., concurring). The plaintiff's loss must directly result from the deceptive representation. The consumer protection act specifically applies to the "[representation] that . . . services are of a particular standard, quality or grade . . . if they are of another" and the "[advertisement of] . . . services with intent not to sell them as advertised." RSA 358-A:2, VII, IX. I would therefore hold that the act's prohibition against unfair or deceptive commercial activity applies to the commercial activities of attorneys, and prohibits attorneys from making deceptive representations about their own qualifications and the services they provide.

Such a holding would not require that lawyers who advertise that they are general practitioners or that their practice is limited to a particular area of the law are automatically subject to liability under the act simply because a client claims that the standard of service as advertised has not been met. A lawyer who advertises or represents to a client, however, that he or she possesses particular expertise in a specialized area of legal practice, when he or she has not either received advanced education or had experience and training in that area, would subject himself or herself to a claim under the act. The plain meaning of the act, RSA 358-A:2, requires that lawyers who advertise or represent to clients that they are specialists in a limited field of the practice of law requiring special expertise must have a rational basis to make such a claim.

In the instant case the plaintiff challenged the way in which the defendant determined his fee for legal services. The defendant charged a contingent fee for the real estate transaction, informing the plaintiff that this was the "usual and customary fee" for attorneys practicing in the area of real estate law. Evidence was presented to establish that a contingent fee is not the customary fee arrangement in this area of legal practice, and that a contingent fee

could cause a conflict between the attorney's interest in receiving a maximum fee and his or her obligation to the client to keep the overall cost of the project as low as possible. There is no more commercial element to the practice of law than the setting of fees. *United States v. Oregon State Bar*, 385 F. Supp. 507, 517 (D. Or. 1974). The way in which an attorney determines the price of legal services certainly involves the commercial aspects of the attorney's activities, and a deceptive representation concerning the usual fee arrangement between lawyer and client would violate the consumer protection act.

The plaintiff also asserted that the defendant's advertising was deceptive, in violation of the act. Advertising by attorneys falls squarely within the scope of the act. The defendant stated on his letterhead and business cards that he was "[e]ngaged in the practice of taxation, finance, business organization and other areas of general practice." The defendant's alleged representations, including his advertisements, concerning his experience in dealing with business and financial matters specifically would fall within the ambit of the act, RSA 358-A:2, VII, and the trier of fact would have to decide whether the representations were deceptive and caused a loss to the plaintiff through causing him to retain or to continue to retain the defendant.

Both the defendant's investment advice and the way in which the defendant handled the shopping center transaction were challenged at trial. These challenges were not directed to the commercial aspects of the legal profession, but to the competence and care of the defendant in rendering legal services. These claims involve the professional judgment of the defendant and activities which required a knowledge of business, property, and tax law. Such claims really present allegations of malpractice involving the actual practice of law, and thus would be beyond the reach of the consumer protection act.

The trial court ruled that because the defendant advertised his services to the public, "his actions with respect to those advertised services [were] subject to the [a]ct's proscriptions." This resolution of the problem extends too far. I would hold that only the commercial aspects of the defendant's activities were subject to the act's proscriptions, and remand for a new trial.

The majority, relying upon what I perceive to be a strained interpretation of RSA 358-A:3, I, holds that the commercial practices of attorneys are statutorily exempt from the act, and thus extends immunity to activities from which the legislature intended to protect consumers. The commercial aspects of the legal profession con-

stitute activities in "trade or commerce" within the meaning of RSA 358-A:1, II, and the plaintiff's claims concerning the defendant's commercial acts were properly included in his allegations under the consumer protection act. The actual practice of law, however, should be beyond the scope of the act, and the plaintiff's claims that do not pertain to the defendant's commercial activities were not properly included in a challenge under the consumer protection act. Attorneys must be free to use their professional judgment in advising and counseling clients without fear of the imposition of strict liability for any injury that may result, but the public interest requires that unfair or deceptive commercial activities by attorneys be redressable through the consumer protection act. Today's holding denies consumers this remedy, and I therefore respectfully dissent.