Adolph Coors Co. v. Globe Dist.        CV-92-447-JD  03/29/95

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Adolph Coors Company

    v.                                        Civil No. 92-447-JD

Globe Distributors, Inc., et al.


Globe Distributors, Inc., et al.

    v.                                        Civil No. 92-496-JD

Adolph Coors Company


O P I N I O N


In its order and memorandum opinion of May 27, 1992, the
Bankruptcy Court awarded the plaintiffs, Globe Distributors, Inc.
and Dennis Bezanson, Trustee ("Globe"), the reasonable attorney's
fees and costs accrued during its successful litigation against
the defendant, Adolph Coors Co. ("Coors").  Before the court is a
consolidated appeal of the Bankruptcy Court's order.  The court's
appellate jurisdiction is based on 28 U.S.C. § 158(a)(1993).


Background

I.   Underlying Proceedings

On October 25, 1985, Globe, a beer distributor, entered into
a five-year distribution agreement with Coors.  Globe's sales
skyrocketed and at one point it was the second or third most

successful Coors distributor in the region.  However, during the summer of 1988 the company began to experience cash flow difficulties and on October 18, 1988, Coors announced that it was going to terminate product shipment because it believed Globe was no longer financially capable of properly servicing the market. Globe filed a chapter 11 bankruptcy petition on December 22, 1988.

Globe filed this adversary action alleging that Coors violated its contractual obligations and state law when it terminated the distributorship agreement.  The bankruptcy court dismissed a number of Globe's legal theories and heard the remaining ones during a four day trial in October 1990.

In a memorandum opinion issued on May 31, 1991, the bankruptcy court ruled that:  (1) Coors breached the distributorship agreement with Globe and violated the Wholesale Fair Dealing Agreements for the Distribution of Fermented Malt Beverages Act, N.H. Rev. Stat. Ann. ("RSA") § 181:36 et seq.; (2) Coors breached the common law duty of good faith and fair dealing; and (3) Coors engaged in unfair or deceptive practices in violation of the consumer protection act, RSA § 358-A:1 et seq.  The bankruptcy court awarded Globe $5,166,118 in "actual damages" which was doubled under the consumer protection act.  The bankruptcy court

2

further awarded Globe its reasonable attorney's fees and costs, again under the consumer protection act.

## II. Fees and Costs

In an order and memorandum opinion issued on May 27, 1992, the bankruptcy court ordered Coors to pay Globe's attorneys, the law firm of Wadleigh, Starr, Peters, Dunn & Chiesa ("Wadleigh") $296,348.00 in fees and $2,536.11 in expenses. Globe Distributors, Inc. v. Adolph Coors Co., Adv. No. 88-97, slip op. at 17 (Bankr. D.N.H. May 27, 1992). When computing the attorney's fees, the bankruptcy court accepted Wadleigh's claim that it expended 1,376 attorney and paralegal hours handling the litigation which, at the firm's regular hourly rates, yields a fee of $148,174. Id. at 2-3. The bankruptcy court then doubled this figure, reasoning that under federal law the circumstances of the case warranted a fee multiplier of two. Id. at 15.

The computation of the attorney fee award is the subject of this consolidated appeal. The bankruptcy court ruled that because the fees were awarded under the New Hampshire consumer protection act, RSA § 358-A:10, the actual amount of the award is to be calculated according to state law. Id. at 7-8, n.8. However, the bankruptcy court, constrained by the apparent absence of state law setting out the "applicable standards or

3

methods" for determining the fee, concluded that the federal "lodestar" method best approximates what a New Hampshire court would apply under the fee-shifting provisions of the consumer protection act. Globe Distributors, Inc. v. Adolph Coors Co., Adv. No. 88-97, slip op. at 4 (Bankr. D.N.H. Aug. 6, 1992).

In its application of state law, the bankruptcy court rejected Wadleigh's original request that it receive approx-imately $4.2 million, or one-third of Globe's damage award, under its contingency fee arrangement with the plaintiffs. Globe Distributors, slip op. at 14-15 (Bankr. D.N.H. May 27, 1992). Rather, the bankruptcy court applied the criteria of Furtado v. Bishop, 635 F.2d 915, 920, 924 (1st Cir. 1980), and other federal cases to determine the lodestar fee award. Id. at 7-10, 14-16. The bankruptcy court next found that "the risk of nonpayment deserves some multiplier or upward adjustment . . .[and] a multiplier of two is reasonable." Id. at 15.

On August 6, 1992, the bankruptcy court denied Globe's motion to reconsider the fee award. Globe Distributors, slip op. at 1 (Bankr. D.N.H. Aug. 6, 1992). Coors' appeal and Globe's cross-appeal followed and have been consolidated into the instant action.

4

## Discussion

Coors appeals the order on several grounds, *inter alia*, that the risk of nonpayment does not as a matter of law justify a lodestar multiplier of two; that the bankruptcy court erroneously awarded fees for legal services unrelated to the adversary proceeding; and that Globe's entire fee application should be dismissed for its lack of good faith. Brief for the Appellant, Adolph Coors Co. ("Coors Brief") at 1, 9-10. Globe cross-appeals the order on several grounds, *inter alia*, that New Hampshire has not adopted the federal lodestar method; that New Hampshire law places greater weight on the risk of nonpayment and the existence of a contingency fee agreement; and that the application of federal law denied Globe equal protection of the law. Brief of Globe Distributors, Inc. and Dennis Bezanson, Trustee ("Globe Brief") at 1, 7-9.

## I.   Standard of Review

District courts have jurisdiction to hear appeals of "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C.A. § 158(a) (West 1993). The court reviews "legal determinations *de novo* and factual findings on a clearly erroneous standard." *In re DN Associates*, 3 F.3d 512, 515 (1st Cir. 1993) (quoting *In re Gonic Realty Trust*, 909 F.2d 624, 626

(1st Cir. 1990); citing In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. 1991)). "A finding of fact is 'clearly erroneous' when, after reviewing the evidence, the [court] is 'left with the definite and firm conviction that a mistake has been committed.'" In re G.S.F. Corp., 938 F.2d at 1474. Moreover, the court grants considerable deference to "factual determinations and discretionary judgments made by a bankruptcy judge, such as may be involved in calculating and fashioning appropriate fee awards . . . ." In re DN Associates, 3 F.3d at 515.

> Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals . . . . The bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails.

Id. (quoting In re Martin, 817 F.2d 175, 182 (1st Cir. 1987)).


II. New Hampshire Law Governs the Calculation of a Reasonable Attorney's Fee Awarded under RSA § 358-A

Globe, as the prevailing party under the consumer protection act, is entitled to receive litigation costs and "reasonable attorney's fees." RSA § 358-A:10 (1984). New Hampshire law governs the availability and determination of the "reasonable" fee. Northern Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 475 (1st Cir. 1988); see Blanchette v. Cataldo, 734 F.2d 869, 878 (1st Cir. 1984) ("where an award of fees or costs rests on state

6

law, state law also controls the method of calculating the size of the award").  However, where "state law is devoid of specific self-contained criteria . . . or seems silent or incomplete on the manner of calculation, . . . federal standards may well become relevant."  Northern Heel, 851 F.2d at 475, n.11 (quotations omitted).

The fee-shifting provisions of RSA § 358-A:10 do not specify the proper method for calculating an award under the act.  See RSA § 358-A:10.  The act does invite courts to be "guided by the interpretation and construction given section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), by the Federal Trade Commission and the federal courts."  RSA § 358-A:13; see Rousseau v. Eshleman, 128 N.H. 564, 571, 519 A.2d 243, 248 (1986) (dissenting opinion) ("courts often look to cases decided under the antitrust laws in construing cases under the Federal Trade Commission Act").  Moreover, the act tracks the language of the Massachusetts consumer protection act, Mass. Gen. L. ch. 93A, and New Hampshire courts have frequently relied on Massachusetts law when interpreting RSA § 358-A.  Chroniak v. Golden Inv. Corp., 983 F.2d 1140, 1146, n.11 (1st Cir. 1993) (citing Chase v. Dorais, 122 N.H. 600, 602, 448 A.2d 390, 391-92 (1982)); Donovan v. Digital Equipment Corp, No. 93-97-JD, slip op. at 23-25 (D.N.H. Dec. 13, 1994) (construing RSA § 358-A according to

7

Massachusetts law); see Roberts, 138 N.H. at 532, 643 A.2d at 960 (expressly adopting statutory construction of the Massachusetts Appeals Court); see also McClary v. Erie Engine & Mfg. Co., No. 93-521-SD, slip op. at 3-4 (D.N.H. November 23, 1994) (expressly relying on decision of the Massachusetts Appeals Court).

Although there are no reported decisions which set out the proper method for calculating attorney's fees awarded under RSA § 358-A:10, New Hampshire courts routinely determine whether a fee award is "reasonable" in the context of other fee-shifting statutes or common law exceptions to the ordinary rule that litigants bear their own fees and costs. E.g., McCabe v. Arcidy, 138 N.H. 20, 29-30, 635 A.2d 446, 452-53 (1993) (determination of "reasonableness of a fee" in context of attorney lawsuit to recover from guarantor of client under written fee agreement); City of Manchester v. Doucet, 133 N.H. 680, 681, 582 A.2d 288, 289 (1990) (determination of "reasonable counsel fees" in context of workers' compensation statute, RSA § 281:37-A); Cheshire Toyota/Volvo, Inc. v. O'Sullivan, 132 N.H. 168, 170, 562 A.2d 788, 789-90 (1989) (same); Funtown USA, Inc. v. Town of Conway, 129 N.H. 352, 354-56, 529 A.2d 882, 883-854 (1987) (determination of "reasonableness" of attorney's fee awarded following bad faith or frivolous appeal, N.H. Sup. Ct. R. 23). New Hampshire courts enjoy broad discretion when calculating a reasonable attorney's

8

fee, e.g., Drop Anchor Realty Trust v. Hartford Fire Ins. Co., 126 N.H. 674, 681, 496 A.2d 339, 344 (1985) (quoting In re Bergeron Estate, 117 N.H. 963, 967, 380 A.2d 678, 681 (1977)), and are guided by several criteria drawn from the New Hampshire Rules of Professional Conduct:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and the ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

McCabe, 138 N.H. at 29, 635 A.2d at 452 (citations omitted); see N.H. Rules of Professional Conduct 1.5 (1990). "There can be no rigid, precise measure of reasonableness, however, because the weight accorded each factor depends on the circumstances of each particular case." McCabe, 138 N.H at 29, 635 A.2d at 451.

9

Prevailing litigants, particularly in the workers'
compensation area, have received attorney's fee awards based on a
contingency agreement. E.g., Couture v. Mammoth Groceries, Inc.,
117 N.H. 294, 296-97, 371 A.2d 1184, 1186 (1977) (award based on
percentage of plaintiff's recovery held reasonable). Although
the court may model a fee award after a contingency agreement,
this is merely one approach and, regardless of the method of
calculation, the ultimate award must be reasonable under the
established criteria. See Doucet, 133 N.H. at 683, 582 A.2d at
290 ("While a contingent fee arrangement is not to be 'rubber
stamped,' it is one of a number of factors for a court to
consider in determining a reasonable fee.") (quoting Cheshire
Toyota/Volvo, 132 N.H. at 171, 562 A.2d at 790); Corson v. Brown
Prods, Inc., 120 N.H. 665, 667, 421 A.2d 1005, 1007 (1980)
(rejecting argument that court is bound by contingent fee
arrangement when calculating reasonable fee award under workers'
compensation statute); see also Mammoth Groceries, 117 N.H. at
296-97, 371 A.2d at 1186 (contingent fee arrangement neither per
se reasonable nor per se unreasonable).

III. New Hampshire Has Not Adopted the Federal Lodestar Method

In its cross-appeal, Globe argues that the Bankruptcy Court
erroneously adopted the federal lodestar method when it should

have calculated attorney's fees according to state law criteria, including a consideration of the contingent fee agreement and the attendant risk of nonpayment. Globe Brief at 10-17. In contrast, Coors asserts that the federal lodestar approach is an appropriate method for fee calculation under New Hampshire law. Reply Brief for the Appellant, Adolph Coors Co. ("Coors Reply Brief") at 2-8.

The bankruptcy court correctly observed that "neither the legislative history . . . nor New Hampshire case law specifically sets forth the applicable standards or method for determining the amount of reasonable attorney's fees under the consumer protection act." Globe Distributors, slip op. at 3 (Bankr. D.N.H. Aug 6, 1992). Despite the absence of direct authority on the issue, the supreme court has articulated the criteria to be used when determining a "reasonable" fee to be awarded under various statutory and common law fee shifting schemes. The court finds that the criteria, supra, are sufficiently developed and well-suited for the calculation of an award under RSA § 358-A:10 to obviate the need to adopt the federal lodestar method or to be guided by methods employed in other jurisdictions. Cf. Northern

<u>Heel</u>, 851 F.2d at 475, n.11 (federal standards relevant where state law is incomplete, silent or devoid of criteria).[1]

The bankruptcy court recognized that the federal lodestar method incorporates several of the factors outlined in the New Hampshire Rules of Professional Conduct and subsequently adopted

---

[1]Coors asserts that "state and federal courts in New Hampshire apply the lodestar method in determining the reasonable amount to be awarded under fee-shifting statutes" and, thus, the bankruptcy court correctly adopted the federal method as a matter of state law. Coors Reply Brief at 2; Coors Brief at 10-11, n.2 (citing <u>Refuse & Env. Sys., Inc. v. Industrial Servs. of America</u>, 732 F. Supp. 1209 (D. Mass 1990), <u>aff'd in part, rev'd in part</u>, 932 F.2d 37 (1st Cir. 1991); <u>Funtown USA</u>, 129 N.H. 352, 529 A.2d 882; <u>Rousseau</u>, 128 N.H. 564, 519 A.2d 243 (dissenting opinion); <u>Scheele v Village Dist. of Edelweiss</u>, 122 N.H. 1015, 453 A.2d 1281 (1982)).

The argument fails because it is based on a misreading of the cited authority. First, because New Hampshire has formulated its own fee calculation criteria the court need not determine the proper method by crude analogy to federal antitrust law or to the incorrect interpretation of Massachusetts law by a federal court sitting in that state. <u>See</u> <u>Rousseau</u>, 128 N.H. at 571, 519 A.2d at 248 (dissenting opinion) (antitrust law used to construe Federal Trade Commission Act); <u>Refuse</u>, 932 F.2d at 44-45 (lodestar fee award granted under state consumer protection statute remanded for calculation under state law criteria). Second, the supreme court did not adopt the federal lodestar method in <u>Scheele</u> but rather used it to calculate an award under 42 U.S.C. § 1988, a <u>federal</u> civil rights statute. <u>See</u> 122 N.H. at 1020-21, 453 A.2d at 1284-85. Finally, although the special master who recommended the fee award in <u>Funtown USA</u> "also noted" that the amount requested would be reasonable under the lodestar method, on appeal the supreme court reviewed the reasonableness of the award by applying the state law criteria adopted from the Rules of Professional Conduct. <u>See</u> 129 N.H. at 355-58, 529 A.2d at 884-85. The court finds that, as a matter of New Hampshire law, the lodestar method is an incorrect basis upon which to calculate fees awarded under the state consumer protection statute.

12

by the state supreme court.  As a practical matter the similarities may result in the same or a similar fee award under either the lodestar or the New Hampshire approach.  However, the fact that the two approaches may yield the same result in a given case does not justify the application of the federal method of calculation where state statute provides the rule of decision and the fee-shifting remedy and where the state has adopted its own method of calculation.  See Refuse, 932 F.2d at 44 ("The award of attorney's fees [under Massachusetts consumer protection law] must, of course, be governed by Massachusetts law.").  In Refuse, the First Circuit ruled that the lodestar method was incorrectly used to calculate an award under the fee shifting provisions of the Massachusetts consumer protection act notwithstanding the district court's conclusion that the Massachusetts approach "would produce the same results."  Id. at 44-45.  The case was remanded for re-calculation according to the state law criteria for determining a reasonable fee.  Id.

The court finds the bankruptcy court correctly ruled that New Hampshire law governs the calculation of fee awarded under a state statute but erred in its application of state law by erroneously employing the federal lodestar method of

calculation.[2]   This case must be remanded for the calculation of a reasonable attorney's fee award under the New Hampshire common law criteria.


IV.  Fee Arrangements Are Properly Considered Under the New Hampshire Criteria Even if They Do Not Comport With RSA § 508:4-e and the Rules of Professional Conduct.

Coors also asserts that the contingency agreement is an improper basis upon which to calculate a fee award because Wadleigh failed to file a written agreement with the bankruptcy court at the time of pleading as required by state law.  Coors Brief at 12-14, n.4 (citing RSA § 508:4-e (Supp. 1993); N.H. Rules of Prof. Conduct 1.5(c)).  Coors further asserts that Wadleigh has "forefeit[ed] rights to compensation" by failing to secure from the bankruptcy court prior approval of the contingency arrangement as required by federal law.  Id. (citations

---

[2]Coors also argues that the bankruptcy court incorrectly enhanced the fee award to reflect the contingency agreement and Wadleigh's attendant risk of nonpayment.  Coors Brief at 14 (citing City of Burlington v. Dague, 112 S. Ct. 2638 (1992)).  Coors is correct that "enhancement for contingency is not permitted under the [federal] fee-shifting statutes at issue" in Dague.  Id. at 2644.  However, given the ruling, supra, that the lodestar method does not govern a fee award under RSA § 358-A:10, the court is not bound by the Supreme Court's interpretation of the federal method.  Indeed, the New Hampshire criteria explicitly require consideration of whether the fee was fixed or contingent.  See, e.g., McCabe, 138 N.H. at 26, 635 A.2d at 452.

omitted). Somewhat inexplicably, Globe has not responded to the argument. See Globe Brief.

Coors' federal law argument fails because state law governs the fee award in this case. However, the state law argument does present questions about the validity and enforceability of a contingent fee agreement executed in disregard of the statutory formalities. In New Hampshire,

> all written contingency fee agreements entered into pursuant to Rule 1.5(c) of the Rules of Professional Conduct shall be filed with the court at the time of the entry of pleadings by the plaintiff's attorney.

RSA § 508:4-e(III).

The bankruptcy court addressed the argument in its May 27, 1992, order and found that "the fee agreement between plaintiff Globe and their counsel is a contract between those parties, and has no binding effect upon this Court's determination of a 'reasonable fee' to be paid by the losing defendant in this litigation." Globe Distributors, slip op. at 5 (Bankr. D.N.H. May 27, 1992).

The court, constrained by the incomplete record filed with the appeal, cannot determine whether Globe has, indeed, failed to satisfy these requirements. However, neither party nor their attorneys have attempted to enforce the contingency agreement and, as such, the question of whether the agreement satisfies the statutory requirements for enforceability is irrelevant.

15

Moreover, Coors does not challenge the veracity of the affidavits submitted by Globe as evidence of the contingency agreement. Coors Brief at 13, n.4 ("[The] writing and prior approval requirement prevent a fee applicant from submitting an opportunistic claim to a contingency fee after the fee has been ordered to be paid by another party. . . . Coors is not suggesting that this occurred here."). There is apparently no dispute that a court applying the New Hampshire fee criteria may consider the <u>nature</u> of the attorney's employment arrangement, even if that arrangement may not be enforceable against the client. The court finds that any failure to satisfy the statutory requirements does not prevent the bankruptcy court from relying on the "fixed or contingent fee" factor when it re-calculates the award under the New Hampshire common law criteria.

## V. Failure to Discount Award to Reflect Attorney Resources Expended on Unrelated Matters.

Coors alleges the bankruptcy court erroneously awarded Globe fees for legal services expended on dismissed claims, failed claims, the unsuccessful defense of counterclaims, and other legal matters unrelated to the adversary proceeding. Coors Brief at 16.[3] Globe responds that the bankruptcy court's decision to

---

[3]Coors advances strong federal authority, including <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983), for the proposition that under the federal lodestar approach the court "may attempt to identify

include these legal services in the fee calculation constitutes a discretionary ruling entitled to deference on appeal. See Globe Brief at 24.

New Hampshire courts consider the "time and labor required" for a particular task when applying the fee determination criteria. See, e.g., McCabe, 138 N.H. at 29, 635 A.2d at 452. Attorney resources expended on claims which are "analytically separate," "distinct," and "severable" from the claim upon which the fee award is based cannot be considered "time and labor required" for purposes of calculating a fee award. See Funtown USA, 129 N.H. at 356, 529 A.2d at 885; see also McCabe, 138 N.H. at 29, 635 A.2d at 452.

The bankruptcy court addressed the substance of Coors' present argument in its May 27, 1992, order:

> Coors objects that, because some of the counts of plaintiffs' original Complaint were stricken, because plaintiffs only prevailed on three of the nine counts in their Complaint, and because plaintiffs were unsuccessful in their defense of Coors' counterclaims, plaintiffs should not recover attorneys' fees for time spent on those matters.

---

specific hours that should be eliminated, or it may simply reduce the award to account for the limited success" of certain attorney efforts. 461 U.S. at 436-37. However, the fee award in this case is not properly calculated under the lodestar method and, therefore, the court is not bound by judicial interpretations of that method. See Funtown USA, 129 N.H. at 356, 529 A.2d at 884-85 ("Hensley is not controlling authority" on awards calculated under state law fee-shifting schemes).

In my judgment, the hours expended by plaintiffs' counsel on the litigation involved in this adversary proceeding clearly were not excessive, nor were the hourly rates anything but reasonable in terms of the complexity and toughness that the lawsuit presented. . . . _I find that the matters upon which plaintiffs were unsuccessful were relatively minor and were subsumed into the entire litigation._ Accordingly, plaintiffs' failure to prevail on certain claims, for one reason or another, should not result in a reduction of their counsel's hours in the context of this "reasonable fee" determination.

_Globe Distributors_, slip op. at 3-4 (Bankr. D.N.H. May 27, 1992) (emphasis supplied) (footnotes omitted).

The bankruptcy court, having presided over the myriad of proceedings underlying the instant appeal, is intimately familiar with the progress of the case and therefore is best equipped to make the "factual determinations and discretionary judgments . . . involved in calculating and fashioning appropriate fee awards." See _In Re DN Associates_, 3 F.3d at 515. The determination of which services are sufficiently related to the adversary proceeding to be properly compensable under the fee-shifting statute necessarily involves a "fact-intensive" analysis accorded wide discretion on appeal. See _id._ (quoting _In re Martin_, 817 F.2d at 182). Of course, even under the court's deferential standard of appellate review, findings of fact may be set aside if "clearly erroneous" or contrary to applicable law. _Id._ Because the case is remanded for a re-calculation of the fee award under the New Hampshire criteria, the court need not

18

determine whether the bankruptcy court's findings relative to the inclusion of all claimed hours is clearly erroneous.

## VI.  Constitutional Issues

In its cross-appeal Globe argues that the bankruptcy court's application of the lodestar method unconstitutionally created "two classifications of plaintiffs and defendants [in] violat[ion of] the equal protection rights of Globe and others in its position under New Hampshire law."  Globe Brief at 20.  Given the ruling, supra, that the lodestar method does not govern the determination of a RSA § 358-A:10 fee award, the court need not determine whether the bankruptcy court's error was of a constitutional dimension.

## VII. Neither Party Has Litigated in Bad Faith

As an additional grounds for appeal Coors asserts that Globe's petition for a fee award of more than four million dollars constitutes an "inexcusable reaching" and "opening gambit" such as to warrant a rejection of the entire fee petition under Lewis v. Kendrick, 944 F.2d 949 (1st Cir. 1991).  Coors Brief at 28.  Globe responds that Lewis does not govern fee awards under RSA § 358-A:10 and, even if First Circuit law did control, that it filed the fee petition in good faith under New

19

Hampshire law.  Globe Brief at 27-28.  Globe next asserts that Coors' Lewis argument lacks a legal basis and "should be sanctioned as frivolous."  Id. at 28 ("[I]t is actually Coors which is acting in bad faith . . .").

The court takes a dim view of these cross accusations of bad faith lawyering as they reflect poorly on counsel, they cloud the legitimate legal issues presented by each party to this appeal, and they unnecessarily consume judicial resources.

The dominant issue on appeal is whether the bankruptcy court correctly relied on the federal lodestar method when calculating the RSA § 358-A:10 fee award.  Although the court has ruled that the bankruptcy court incorrectly employed the lodestar method, the reliance on federal law was not an obvious error.  Thus, it was entirely appropriate for Coors also to base its argument on federal caselaw construing the lodestar method, such as the First Circuit's recent decision in Lewis.  By the same token, Globe's argument that New Hampshire law governs the fee calculation had merit when unsuccessfully advanced before the bankruptcy court and, in fact, has prevailed before this court.  Specifically, New Hampshire courts have in the past held fees calculated under a contingency agreement to be "reasonable" and, thus, Globe had a good faith basis to petition for a full one-third recovery, even

20

though such a fee award would be disporportionately greater than that calculated under the traditional hourly billing method.

The court finds that Globe's conduct does not warrant an outright rejection of its fee petition under <u>Lewis</u>, as argued by Coors.  Likewise, the court finds Coors' <u>Lewis</u> argument (i.e. that the fee petition be rejected outright) does not warrant sanctions, as argued by Globe.


## VIII. Interest Rate Calculation

Coors and Globe each raise arguments in their respective briefs concerning the appropriate rate of interest to be applied to the damages awarded following the adversary proceeding.  <u>See</u> Globe Brief at 22-24; Coors Reply Brief at 11-16.

The bankruptcy court's orders of May 27, 1992, and August 6, 1992, are the subjects of this appeal.  These orders only concern Globe's petition for fees under RSA § 358-A:10 and did not purport to resolve any other dispute or legal issue relative to the adversary proceeding.  The court need not consider the merits of the apparent dispute involving interest calculation since the issue was not addressed in the bankruptcy court orders now on appeal.

21

## Conclusion

The court finds that, as a matter of state law, fees awarded under RSA § 358-A:10 are to be calculated according to the New Hampshire common law criteria and not by the federal lodestar method. The case is remanded to the bankruptcy court for the re-calculation of Globe's reasonable attorney's fees in a manner consistent with this opinion. The clerk's office is ordered to close this case and to forward a copy of this opinion to the bankruptcy court.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

March 29, 1995

cc:  Kenneth E. Churbuck, Esquire
     William S. Gannon, Esquire
     Charles A. Szypszak, Esquire
     Earle D. Bellamy II, Esquire
     Peter W. Mosseau, Esquire
     George Vannah, U.S. Bankrupcy Court

22