**In re GLOBE DISTRIBUTORS, INC., Debtor.**

**GLOBE DISTRIBUTORS, INC., Plaintiff,**

v.

**ADOLPH COORS COMPANY, Defendant.**

Bankruptcy No. 88–807.

Adv. No. 88–97.

United States Bankruptcy Court, D. New Hampshire.

Feb. 7, 1990.

Connie Rakowsky, Charles Szypszak, Orr & Reno, Concord, N.H., Earle D. Bellamy, II, Bradley, Campbell, & Carney, Golden, Colo., for Adolph Coors Co.

William S. Gannon, Wadleigh, Starr Offices, Manchester, N.H., for Globe Distributors.

Lon E. Siel, Concord, N.H., for State of N.H.

Globe Distributors, Manchester, N.H., for debtor.

Dennis G. Bezanson, South Portland, Me., trustee.

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS WITH REGARD TO NINTH CLAIM FOR RELIEF

JAMES E. YACOS, Bankruptcy Judge.

This Chapter 11 adversary proceeding concerns the termination of a wholesale beer distributor agreement. The plaintiff, and distributor under the agreement, seeks various grounds for relief, including treble damages in its ninth claim of relief for alleged unfair and deception trade practices prohibited by the New Hampshire Consumer Protection Act, N.H. RSA § 358–A (1984 Supp. & 1988). That claim is the subject of defendant's motion for judgment on the pleadings and this order. This Court has jurisdiction under 28 U.S.C. § 157, and the general reference order dated February 1, 1985 by the U.S. District Court for New Hampshire.

## I. PLAINTIFF'S ALLEGATIONS

Globe contends that Coors wrongfully terminated the distribution agreement with the partial intent of forcing Globe to sell its assets to Coors at an unreasonably low price. These allegations are more specifically examined below.

### A. WRONGFUL TERMINATION

The New Hampshire statute governing termination of distributorships, N.H. RSA § 181:38 (Supp.1988), allows for termination for "good cause", which includes insolvency. A notice of intent to terminate can only be given after a wholesaler is informed in writing of any "deficiency" and given reasonable time to make corrections. See N.H. RSA § 181:39 (Supp.1988). Then, 90 days advance notice must be given of the termination. However, no notice is required if a wholesaler is insolvent or fails "to pay any account when due." The distribution agreement had similar provisions for insolvency and payment defaults, but

also had a provision stating that any defaults had to be stated in writing with the distributor given 90 days to correct the defaults.

On October 18, 1988, Coors served Globe with a termination letter stating that Globe was insolvent, that Globe had failed to meet payment obligations under a demand letter allegedly dated August 18, 1988, and that Globe failed to perform other obligations under the distribution agreement.

In response, Globe contends it was not insolvent, and that it never received the August 18th letter. Moreover, Globe contends that the parties had entered into a "debt reduction agreement" to pay Coors its pre-petition debt and Coors had accepted payments according to this plan thereby waiving the alleged payment defaults. Finally, Globe contends Coors never specified defaults other than payment defaults 90 days in advance of termination with an opportunity for Globe to cure as provided in the agreement.

## B. SALE CONDUCT

Globe contends that immediately after the wrongful termination Coors proposed a sale of all of the Globe assets with Globe staying in business and continuing to sell Coors products under a sub-distribution agreement with Coors' new distributor until the closing of title. (A third party was also involved in the sale transaction.) Globe agreed to the sale. Then, Globe alleges Coors informed the New Hampshire Liquor Commission that Globe had payment defaults, despite the existence of the debt reduction agreement, which resulted in Globe being unable to distribute Coors products. The sub-distribution agreement was terminated. Although the parties closed the asset sale, the New Hampshire Liquor Commission failed to approve the transaction. Now, Globe cannot sell Coors products, including its inventory.

## II. THE CONSUMER PROTECTION ACT

This statute is titled "Regulation of Business Practices for Consumer Protection", but protects far more than what the layman would call "consumer." There is no dispute among the parties that the statute covers the allegations of the plaintiff regarding what happened between the two corporations. In other words, it is conceded plaintiff has alleged an "unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. RSA § 358–A:2.

The dispute lies in whether an exemption to the statute applies in this case. The exemption, N.H. RSA § 358–A:3 (emphasis added), is as follows:

The following *transactions* shall be exempt from the provisions of this chapter:

I. Trade or commerce *otherwise permitted* under laws as administered by any regulatory board or officer acting under statutory authority of this state or the United States.

## III. DISCUSSION

As part of the United States District court system, I am bound by the decisions of the District Judges of that court. Recently, two cases have been decided by District Judge Loughlin which constrain me to rule that the exemption does not apply in this case. In *Therrien v. Resource Fin. Group, Inc.*, 704 F.Supp. 322 (D.N.H.1989), the court held that the exemption did not apply to a claim against a bank for an alleged failure to make adequate disclosures in connection with a loan transaction that was subject to some banking regulations. Similarly, in *WVG v. Pacific Ins., Co.*, 707 F.Supp. 70 (D.N.H.1986), the court held that the exemption did not apply for an insurer's allegedly unfair and deceptive failure to pay an insured's claim that was subject to some state insurance regulation. The heart of the reasoning of these cases is as follows:

The plain meaning of the exemptive section of the Consumer Protection Act is that transactions permitted under other laws of New Hampshire or the United States will not be deemed illegal under RSA ch. 358–A. Conversely, if transactions are not permitted under other laws, either expressly or impliedly, then they

are subject to regulation under the Consumer Protection Act. The goal of the legislature would seem to encompass avoidance of a direct conflict with a regulatory scheme. Under RSA ch. 358–A:3, I the issue is whether a transaction "is otherwise permitted", and not whether an agency exists to review the transaction.

*Therrien, supra* at 328 (quoting *WVG, supra* at 72).

Under this reasoning, the conduct of Coors in terminating the distribution agreement and its conduct concerning the sale must be "transactions" "otherwise permitted" by state law to be exempt. They are not. Although statutes regulate the termination of a distributor and provide a private cause of action, see N.H. Rev.Stat Ann. §§ 181:38–181:41, nothing in those statutes permit the "transactions" alleged in the complaint. Moreover, although N.H. RSA § 176:12 (1977) provides that the state Liquor Commission can provide rules for the execution of section 181,[1] no rules have been issued. Thus, in terms of a requested judgment on the pleadings, as a matter of law, I must conclude for present purposes that the Liquor Commission has nothing to do with termination disputes. It has "permitted" nothing.

Defendants urge me to follow the state court decision of *Rousseau v. Eshleman,* 128 N.H. 564, 519 A.2d 243 (1986), *reconsideration denied,* 129 N.H. 306, 529 A.2d 862 (1987), where the New Hampshire Supreme Court held the practice of law was exempted from the Consumer Act due to the existence of the professional conduct committee. Yet, Judge Loughlin has distinguished *Rousseau* as a case involving comprehensive regulation. He explained:

... *Rousseau* cannot be intended to exclude all trade or commerce subject to licensing, especially outside the context of attorneys and similar professionals, whose individual conduct and practice is subject to a comprehensive regulatory

and disciplinary framework. Otherwise, the exemption would swallow the rule and the language of the exemption, covering "transactions" which are "otherwise permitted under laws as administered by any regulatory board," would cover the entire business of industries that are subject to regulatory boards.

*Therrien, supra,* at 328.

No such comprehensiveness of regulation is present in this case with the Liquor Commission upon the face of the relevant statutes and the pleadings presently before the Court. There particularly is no indication of an affirmative duty on the part of the Liquor Commission to "police" the termination of distribution agreements to prevent or nullify unfair or deceptive actions— which would serve to supplant the need for the "treble damage spur" for such policing by private damage actions. To the extent that the District Court cases and the New Hampshire Supreme Court case may be perceived to be in conflict the existence or nonexistence of such a policing function in my judgment can serve to reconcile their results.

There is one other decision in this jurisdiction holding that the Consumer Act did not apply under the facts of its case, although not due to the exemption. In *New Hampshire Automobile Dealers Ass'n, Inc. v. General Motors Corp.,* 620 F.Supp. 1150 (D.N.H.1985) Judge Devine held that the specific provisions of RSA 357–C (concerning motor vehicle dealers) ruled over the general provisions of the Consumer Protection Act. However, this rule does not apply to overlapping statutes as opposed to where statutes conflict. As Judge Loughlin has stated:

'The mere existence of one regulatory statute does not affect the applicability of a broader, nonconflicting statute, particularly when both statutes provide for concurrent coverage of their common subject matter.'

---

**1.** 176:12 provides:

Rules. The commission may from time to time prescribe such rules and regulations not inconsistent with law as it may deem necessary for the issuance of permits and for the posses-

sion, manufacture, transportation, sale, offer for sale, or solicitation of orders for sale of beverages, the operation of the business of permittees and for any other purpose required for the efficient execution of RSA 181.

**380**

*WVG, supra,* at 73 (quoting *Dodd v. Commercial Union Ins. Co.,* 373 Mass. 72, 365 N.E.2d 802, 805 (1977)).

## IV. CONCLUSION

For the reasons stated above, defendant's motion for judgment on the pleadings regarding plaintiff's ninth claim for relief is denied.