U.S. District Court
No. 90-344

## BARBARA D. GILMORE AND WILLIAM C. GILMORE

### v.

## BRADGATE ASSOCIATES, INC. & a.

February 24, 1992

*Barbara D. Gilmore,* of Boston, Massachusetts, by brief and orally, for the plaintiffs.

*Law Offices of David J. KillKelley P.C.,* of Laconia (*David J. KillKelley* on the brief and orally), for the defendant Laconia Investment Properties, Inc.

*John P. Arnold,* attorney general (*Terry L. Robertson,* senior assistant attorney general, on the brief), by brief for the State, as *amicus curiae.*

THAYER, J. The United States District Court for the District of New Hampshire (*Devine,* C.J.) has certified the following question of law for our consideration under Supreme Court Rule 34: "Does RSA 358-A:3 I preclude a Consumer Protection Act claim against a condominium seller and developer?" We answer in the negative.

The relevant facts are as follows. In January 1987, the plaintiffs contracted to purchase a cape-style condominium located in Laconia

from the seller and developer, Colonial Hills Corporation (Colonial Hills), a subsidiary of Bradgate Associates, Inc. (Bradgate Associates). Defendant Laconia Investment Properties participated jointly with Colonial Hills and Bradgate Associates in the marketing of the condominium. Prior to the closing, the parties held a walk-through inspection of the unit, during which they discovered several defects and omissions. At the closing, $1000 was placed in escrow to ensure that the problems would be remedied, and title to the unit was conveyed to the plaintiffs on September 11, 1987. The plaintiffs allege that during the following year they discovered other defects in the unit, including improper insulation and a faulty foundation.

The plaintiffs initiated this diversity action in the United States District Court in April 1989, alleging fraud and deceit, negligent misrepresentation, breach of warranty, and violations of two New Hampshire statutes, the Condominium Act, RSA chapter 356-B (1984 and Supp. 1990), and the Consumer Protection Act, RSA chapter 358-A (1984 and Supp. 1990). By motion filed on May 1, 1990, defendants Bradgate Associates and Laconia Investment Properties sought to dismiss two counts of the plaintiffs' complaint on the grounds that: (1) the warranty claim was filed after the statute of limitations had expired; and (2) the Consumer Protection Act claim fell within the statutory exemption under RSA 358-A:3, I. The district court denied the motion as it related to the warranty claim and issued an order certifying to this court the Consumer Protection Act exemption issue.

The defendants argue that the rule established in *Rousseau v. Eshleman*, 128 N.H. 564, 519 A.2d 243 (1986), *reh'g denied*, 129 N.H. 306, 529 A.2d 862 (1987), requires us to hold that condominium sellers and developers are exempt from the Consumer Protection Act. In *Rousseau*, this court held that attorneys are *per se* exempt from the act because they are regulated by the Supreme Court Committee on Professional Conduct, which is "a regulatory board acting under statutory (and constitutional) authority of this State within the meaning of RSA 358-A:3, I." *Id.* at 567, 519 A.2d at 245. The defendants assert that, like attorneys, developers and sellers of condominiums are subject to regulation by authorities which are designated by statute. Specifically, the defendants contend that they are regulated by the New Hampshire Real Estate Commission under RSA chapter 331-A (1984 and Supp. 1990) and by the attorney general pursuant to RSA chapter 356-B (1984 and Supp. 1990), and that the sale and development of condominiums is, therefore, "trade or com-

merce" which falls within the RSA 358-A:3, I, exemption. For the following reasons, we disagree.

It should be noted at the outset that the *Rousseau* decision is of questionable value to the defendants. In *Rousseau*, a majority of this court subscribed to a broad interpretation of RSA 358-A:3, I, holding that the exemption applies to any trade or commerce regulated under a State statute or federal law. 128 N.H. at 567, 519 A.2d at 245. The *Rousseau* minority of two, however, took the position that the exemption applies only with respect to activities which are administered under State statute or federal law. *Id.* at 569, 519 A.2d at 246. Due to a procedural defect, *see* RSA 358-A:10, II, the case was reargued with the attorney general being allowed to intervene in the proceeding. *Rousseau*, 129 N.H. at 306, 529 A.2d at 862. Prior to the rehearing, the composition of the court changed with the retirement of King, C.J., who had voted with the majority in *Rousseau*, and the appointment of a new Justice. In concurring in the denial of the motion for rehearing, the new Justice stated his view that the statutory exemption should be interpreted narrowly, thus interpreting RSA 358-A:3, I, as did the *Rousseau* minority, but that, given the facts of *Rousseau*, a cause of action nevertheless did not arise under the Consumer Protection Act.

■ The issue before us is a matter of statutory construction; accordingly, we must begin our analysis by considering the plain meaning of the words of the statute. *Town of Wolfeboro v. Smith*, 131 N.H. 449, 452, 556 A.2d 755, 756–57 (1989). The act does not make reference to, or specifically exempt from its purview, the development and sale of condominiums, while it does make it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2 (Supp. 1990). However, RSA 358-A:3, I, exempts, *inter alia*, transactions which are "[t]rade or commerce otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of this state or of the United States." The plain meaning of this provision must be determined in light of the statute as a whole. *Suburban Realty, Inc. v. Albin*, 131 N.H. 689, 692, 559 A.2d 1332, 1334 (1989).

According to the parties' arguments, RSA 358-A:3, I, is susceptible to two very different interpretations. The first emphasizes the words "trade or commerce," so that any activity which falls under the definition of "trade or commerce," *see* RSA 358-A:1, and which is permitted under laws "administered by any regulatory board or offi-

cer" is exempt from the provisions of the Consumer Protection Act. As we indicated earlier, the defendants maintain that this interpretation was adopted by the majority of the court in *Rousseau*, 128 N.H. at 567, 519 A.2d at 245, and should be followed here.

The second interpretation to which RSA 358-A:3, I, is susceptible emphasizes the words "transactions . . . otherwise permitted." The plaintiffs and the attorney general urge us to adopt this interpretation, arguing that the plain meaning of the exemption is that transactions deemed lawful by other laws of New Hampshire or of the United States will be exempt from the provisions of RSA .chapter 358-A. This construction of the act focuses on the *act* which is alleged, rather than the industry regulated, and requires the conduct to be permitted by a regulatory board or officer under another statute, in order for the RSA 358-A:3, I, exemption to apply. According to this theory, the exemption will apply where a party attempts to label as fraud, deceit or misrepresentation conduct which is "otherwise permitted" under laws administered by regulatory boards or officers acting under the statutory authority of this State or the United States. *See Attorney General v. Diamond Mtg.*, 414 Mich. 603, 617, 327 N.W.2d 805, 811 (1982).

■ We find the plaintiffs' interpretation of the act's exemption to be more persuasive. The Consumer Protection Act "is a comprehensive statute designed to regulate business practices for consumer protection by making it unlawful for persons engaged in trade or commerce to use various methods of unfair competition and deceptive business practices." *Chase v. Dorais*, 122 N.H. 600, 601, 448 A.2d 390, 391 (1982). The very words contained in the statute indicate that the act's proscriptions are to be broadly applied. "It shall be unlawful for *any* person to use *any* unfair method of competition or *any* unfair or deceptive act or practice in the conduct of *any* trade or commerce within this state." RSA 358-A:2 (Supp. 1990) (emphasis added). Given this language, neither the legislature nor the *Rousseau* court could have intended to exclude from the protection of the act the large number of industries which are subject to regulation in this State simply because the legislature has provided for regulation of that industry within a statutory framework. The reasoning behind the *Rousseau* decision, if relevant at all, is applicable only within the context of attorneys, whose individual conduct and practice is subject to a comprehensive regulatory and disciplinary framework under the jurisdiction of this court.

■ The mere existence of a regulatory body to oversee certain standards of an industry does not remove all acts and practices of

that industry from the provisions of the Consumer Protection Act. If we were to rule otherwise, the broad interpretation of RSA 358-A:3, I, would allow the exemption to swallow the rule. *See id.* "Under the customary rule of statutory construction, we presume that 'the legislature does not enact unnecessary and duplicative provisions.'" *State v. Powell*, 132 N.H. 562, 568, 567 A.2d 568, 572 (1989) (quoting *DeWees v. N.H. Bd. of Pharmacy*, 130 N.H. 396, 403, 539 A.2d 721, 726 (1988)). Therefore, RSA 358-A:3, I, must be construed as a legislative attempt to avoid direct conflict with other regulatory schemes. *See WVG v. Pacific Ins. Co.*, 707 F. Supp. 70, 72 (D.N.H. 1986). Accordingly, we hold that RSA 358-A:3, I, is to be read as exempting only those actions which are permitted by any regulatory board or officer acting under statutory authority of New Hampshire or the United States.

Next, we must consider whether the defendants' actions were permitted by a statutorily created regulatory scheme, entitling them to application of the RSA 358-A:3, I, exemption. For the reasons that follow, we hold that there are no statutes which preclude the application of the Consumer Protection Act to the claim before us against a condominium developer and seller.

Both RSA chapter 331-A (1984 and Supp. 1990) and RSA chapter 356-B (1984 and Supp. 1990) are comprehensive statutes designed to regulate the real estate and condominium industries. While they regulate and proscribe certain conduct, neither statute expressly *permits* the conduct alleged in the present case.

RSA chapter 331-A (1984 and Supp. 1990) was enacted to protect the public against "fraud and incompetence" at the hands of "unscrupulous brokers and salesmen," *Suburban Realty*, 131 N.H. at 692, 559 A.2d at 1334 (citations omitted), but has been interpreted to have no "effect outside the ethical, licensing, and disciplinary confines of the business," *Finlay Commercial Real Estate v. Paino*, 133 N.H. 4, 8, 573 A.2d 125, 127 (1990). Consequently, only RSA 356-B:65 provides a civil remedy to a purchaser who has been defrauded by a developer or seller of a condominium unit. *Compare* RSA chapter 331-A (1984 and Supp. 1990) *with* RSA 356-B:65. In fact, RSA 356-B:65 specifies the damages to be awarded to a plaintiff who can prove that he or she is entitled to relief. For instance, the purchaser may recover the purchase price and all finance charges paid in connection with the sale of a condominium unit, together with six percent annual interest. *See* RSA 356-B:65, II. The purchaser can also obtain all reasonable costs and attorney's fees, as well as up to $5000 in exemplary damages. *See id.* However, the conduct which allows a

purchaser to obtain these damages is limited to instances where a seller "makes an untrue statement of a material fact, or . . . omits a material fact required to be stated in a registration statement or public offering statement or necessary to make the statements made not misleading." RSA 356-B:65, I.

 Accordingly, we hold that a Consumer Protection Act claim against a condominium developer and seller is not precluded by RSA 358-A:3, I, and, therefore, answer the question certified in the negative.

*Remanded.*

HORTON, J., concurred specially; the others concurred.

HORTON, J., concurring specially: I agree with the answer we are returning to Judge Devine. I am concerned about the test we apply to reach that answer. The application of the consumer protection exemption, RSA 358-A:3, I, is a difficult exercise. The majority opinion is helpful in defining the two poles of our jurisprudence on this statutory exemption. The parties to this appeal have taken their positions in close proximity to these poles. Laconia Investment Properties, Inc. takes the position of the shrinking majority in *Rousseau v. Eshleman*, 128 N.H. 564, 519 A.2d 243 (1986), (and, I submit, the minority). It says that the exemption applies to all aspects of any trade or commerce regulated pursuant to statute, the fate of the abused consumer being properly left to the regulatory authority. The Gilmores say that the exemption is very narrow, being limited to those transactions which are specifically permitted under a statutorily created regulatory scheme. The majority would take this interpretation one step further, limiting the exemption to actions permitted under New Hampshire or federal regulatory statutes themselves or permitted by a regulatory board or officer under a statute.

I disagree with the majority's statement that the *Rousseau* dissent "took the position that the exemption applies only with respect to activities which are in accordance with State statute or federal law." That learned minority accepted the broad trade or commerce theory but said no exemption was available since the regulatory scheme was not a creature of statute. They then proposed a limited common law exemption for the portion of the practice of law that was not trade or commerce (the "learned profession" portion).

I would follow *Rousseau*. I would begin by finding that the RSA 358-A:3, I, exemption applies to all transactions arising under regu-

lated trade or commerce. A plain meaning analysis would appear to support this position. RSA 358-A:3, although exempting "transactions," purports to define the scope of transactions exempted in each of its paragraphs. Paragraph I exempts transactions arising in trade or commerce administered by regulatory authority authorized by statute. Paragraph II (repealed in 1985) exempted transactions arising in trade or commerce which reached a low threshold of gross revenue generated in interstate commerce. Paragraph II then "unexempted" transactions primarily occurring intrastate and over which federal jurisdiction was not asserted. Paragraph III exempts trade or commerce over which the Federal Trade Commission has asserted jurisdiction by specific complaint. Paragraph IV exempts innocent third party disseminators of deceptive material. Finally, under Paragraph IV-a, specific transactions are exempted: those entered into more than two years prior to the complaint.

When the legislature intended to limit the exemption to specific transactions, it did so. *See* RSA 358-A:3, IV-a. When it wanted to make sure that specific transactions were not exempt, it did so. *See* RSA 358-A:3, II (repealed). Otherwise, the legislature dealt in broader exemptions of elements of trade and commerce.

Taking the interpretation of the majority, it is difficult in this age of enlightenment to envision an act, included within the prohibitions of RSA 358-A:2 ("Acts Unlawful"), being permitted by New Hampshire or federal regulatory statutes, or made available for regulatory permission by these statutes. The legislature intended to exempt something meaningful. It was the regulated trade or commerce they intended to exempt.

Having concluded that all transactions in regulated trade or commerce are exempt, I would consider what is "regulated trade or commerce," or, more appropriately, what is "administered" trade or commerce? The specific exemption language is "trade or commerce otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of this state or of the United States." RSA 358-A:3, I. Thus, the exempt trade or commerce must have a statutory basis or be subject to control imposed by statute. The basis or control must be administered by a regulatory board or officer empowered by statute to administer the conduct of the trade or commerce. The scope of administration is the crucial factor for our concern. Therein lies the key to the intent of the exemption. Mere licensing requirements, approval of plans or declarations, limited trade prohibitions, and consumer protection provisions should not be enough. The regulatory scheme, as imple-

mented pursuant to statute, must provide protection to the consumer in a manner calculated to avoid the same ills as RSA chapter 358-A. What the exemption permits is the ability for the legislature and its administrative arms to substitute consumer protection tailored to the needs of trade or commerce as well as the public at large, and to substitute administrative consumer relief for judicial consumer relief. I would require the regulatory scheme to provide functionally equivalent substantive protection and an appropriate dispute resolution procedure. This would provide the statutory framework for administration as intended by the statutory exemption.

RSA chapter 356-B has many elements of such a framework, but neither provides similar substantive protection for the condominium consumer, nor provides an alternate procedure for the resolution of consumer complaints which is comprehensive enough to replace the statutory judicial relief.

My answer also is no, but for these reasons.