**EASTERN MOUNTAIN PLATFORM TENNIS, INC., Plaintiff, Appellant,**

v.

**The SHERWIN–WILLIAMS COMPANY, INC., Defendant, Appellee.**

**EASTERN MOUNTAIN PLATFORM TENNIS, INC., Plaintiff, Appellee,**

v.

**The SHERWIN–WILLIAMS COMPANY, INC., Defendant, Appellant.**

**Nos. 94–1044, 94–1045.**

United States Court of Appeals, First Circuit.

Argued June 7, 1994.

Decided Nov. 28, 1994.

Ovide M. Lamontagne with whom George R. Moore and Devine, Millimet & Branch, P.A., Manchester, NH, were on brief, for The Sherwin–Williams Co.

Stephen S. Ostrach, Patrick W. Hanifin, Todd S. Brilliant and New England Legal Foundation, Boston, MA, were on brief, for Business and Industry Ass'n of New Hampshire, amicus curiae.

Kenneth G. Bouchard with whom Paul B. Kleinman and Bouchard & Mallory, P.A., Manchester, NH, were on brief, for Eastern Mountain Platform Tennis, Inc.

Before TORRUELLA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and CARTER,* District Judge.

CARTER, Chief District Judge.

This action arose from the sale of a paint system recommended by Defendant, The Sherwin–Williams Company ("Sherwin–Williams"), to Plaintiff, Eastern Mountain Platform Tennis, Inc. ("EMPT"), for use in producing platform tennis courts. Sherwin–Williams' representative David Shelley ("Shelley") recommended a paint system to EMPT after EMPT informed Shelley that it would not change products unless the new system met or exceeded the performance of the paint system it had used previously. The Sherwin–Williams system did not perform as well as the system it replaced. In fact, the courts covered with Sherwin–Williams paints began to show signs of wear, with the coating peeling away from the aluminum panels and the courts' surface becoming slick due to loss of aluminum oxide aggregate during the first season of use.[1] After a jury trial, the jury entered a verdict in favor of EMPT in the amount of $1,087,000. The special verdict form indicated that the jury found that Sherwin–Williams had violated an express warranty, an implied warranty of fitness for a particular purpose, and the New Hampshire Consumer Protection Act ("CPA" or "the Act"). N.H.Rev.Stat.Ann. § 358-A (1993). In addition, the jury found that Sherwin–Williams had willfully or knowingly engaged in unfair or deceptive practices. Pursuant to section 10 of the CPA, the trial judge doubled the jury verdict. N.H.Rev.Stat.Ann.

§ 358–A:10 (1993). In addition, the trial judge awarded prejudgment interest on the amount of the original jury verdict up to the date of entry of the final judgment. N.H.Rev.Stat.Ann. § 524:1–b (1993).

## ISSUES ON APPEAL

Sherwin–Williams raises a number of issues on appeal. First, it challenges the trial judge's denial of summary judgment on the CPA claim contending that the CPA does not apply to purely commercial transactions (*i.e.*, transactions that do not involve sales to ultimate consumers). Second, Sherwin–Williams argues that, if the CPA does govern purely commercial transactions, the trial judge nevertheless erred in denying its motion for summary judgment on the CPA claim because the undisputed facts did not establish a violation of the Act. Third, Sherwin–Williams argues that the trial judge erred in denying its motion to set aside the verdict on the CPA claim because the issue should not have been presented to the jury and because it was impossible to determine what portion, if any, of the award was the result of the CPA violation. Fourth, Sherwin–Williams contends that the judge erred in failing to give the jury instructions on "plaintiff's misconduct" or comparative fault. Fifth, Sherwin–Williams seeks a new trial, or remittitur, on the basis that the damages awarded were speculative. Sixth, Sherwin–Williams asserts that the trial judge's conduct during the trial requires a new trial. Finally, Sherwin–Williams challenges the calculation of the award of prejudgment interest on the grounds that such interest is available only to the date of the jury verdict, rather than to the date of entry of final judgment. It further contends that it was error to

---

* Of the District of Maine, sitting by designation.

1. The painting of the tennis platform courts involves a six-step process and two types of paint. First, aluminum panels are washed with acid to eliminate grease and etch the surface. Second, the panels are sanded to increase the profile of the surface. Third, a layer of primer epoxy paint is applied. Fourth, aluminum oxide aggregate is pneumatically broadcast over the wet epoxy primer layer. Fifth, a topcoat of epoxy paint is applied. Sixth, aluminum oxide aggregate is pneumatically broadcast over the wet topcoat.

The paint system must have two important characteristics. First, the primer coat must adhere to the aluminum through extreme changes of temperature because the game is played outdoors on a year-round basis with a heater installed under the platform to melt snow and ice. Second, both the primer coat and the topcoat must have the capacity to hold aluminum oxide aggregate to insure a gritty nonslip surface for platform tennis players.

award prejudgment interest on the portion of the verdict which represented an award of future lost profits.

On cross-appeal, EMPT argues that the trial judge erred in awarding prejudgment interest only on the original jury verdict and not on the entire amount of the judgment, including the doubled verdict under the CPA.

We will address, in turn, each of these contentions.

### DISCUSSION

I. *Application of the New Hampshire Consumer Protection Act to the Purely Commercial Transaction.*

■ The Appellant has failed to preserve this point for review on appeal. The *denial* of a motion for summary judgment does not merge into the final judgment. *Glaros v. H.H. Robertson Co.,* 797 F.2d 1564, 1573 (Fed.Cir.1986). Such a denial, to be preserved for review of a legal conclusion subsumed in the ruling, must be perfected by making a motion for judgment as a matter of law at the close of the evidence. *Watson v. Amedco Steel, Inc.,* 29 F.3d 274, 279 (7th Cir.1994); *Whalen v. Unit Rig, Inc.,* 974 F.2d 1248, 1251 (10th Cir.1992); *see Lama v. Borras,* 16 F.3d 473 (1st Cir.1994). The denial of this latter motion does merge into the judgment, and all rulings of law subsumed within it are subject to review on appeal from the judgment.

■ Here, Appellant failed to make any motion for judgment as a matter of law at the close of all the evidence. Accordingly, the determination, as a matter of law, by the trial judge in ruling on the summary judgment motion that the CPA applied to business transactions never merged into the judgment and is not available for review on this appeal.

■ Even though the issue of statutory construction was not preserved for appeal, we have nevertheless reviewed the record and are satisfied that, in determining the legal question as to whether the CPA applied to the type of transaction disclosed by the evidence in this case, the trial judge committed no "manifest error." The appeal on this point raises a question of statutory construction. In short, Sherwin–Williams argues that the Consumer Protection Act was intended to redress the discrepancies between a knowledgeable commercial seller and a consumer who is placed in the position of relying on the representations of that seller. The provisions of the Act, Sherwin–Williams argues, have no application where, as here, a commercial buyer acquires a product for use in the manufacture of another product in which its expertise may easily be greater than that of the seller. On *amicus* brief, the Business and Industry Association of New Hampshire agrees. Because the issue raised is an issue of law, our review is *de novo.*

■ We begin, and could easily conclude, our assessment of this argument by considering the plain meaning of the words of the statute. *Town of Wolfeboro v. Smith,* 131 N.H. 449, 556 A.2d 755, 756–57 (1989). We must glean the intention of the legislature as to the scope of the Act "from its construction as a whole, not by examining isolated words and phrases." *Petition of Jane Doe,* 132 N.H. 270, 564 A.2d 433, 438 (1989). A thorough reading of the entire statute provides no direct support for Sherwin–Williams' contention that the Act applies only to transactions with ultimate consumers. The unfair and deceptive practices prohibited by the CPA appear to include transactions between business competitors as well as those involving ultimate consumers. N.H.Rev.Stat.Ann. 358–A:2 (1993). There are no provisions which limit the Act's protection to ultimate "consumers" alone. Indeed, there is no definition of a consumer, a consumer good, or a consumer transaction, although such definitions would be critical if the Act were intended to be limited in the way that Sherwin–Williams suggests. Moreover, the statute specifies "exempt transactions" and does not include among them the kind of "commercial transactions" the defendant would delete from the purview of the statutory provisions. N.H.Rev.Stat.Ann. 358–A:3 (1993).

■ With this overview of the statute, we now turn to the specific provisions that EMPT contends make Sherwin–Williams' acts unlawful, and provide EMPT with a

right of action. Here, the statute declares that "[i]t shall be unlawful for *any person* to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of *any trade or commerce* within this state." N.H.Rev.Stat.Ann. 358–A:2 (1993) (emphasis added).[2] Section 10 of the statute provides a private right of action as follows:

> I. *Any person* injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages and for such equitable relief, including an injunction, as the court deems necessary and proper. If the court finds for the plaintiff, recovery shall be in the amount of actual damages or $200, whichever is greater. If the court finds that the use of the method of competition or the act or practice was a willful or knowing violation of this chapter, it shall award as much as 3 times, but not less than 2 times, such amount. In addition, a prevailing plaintiff shall be awarded the costs of the suit and reasonable attorney's fees, as determined by the court. Any attempted waiver of the right to the damages set forth in this paragraph shall be void and unenforceable.

N.H.Rev.Stat.Ann. 358–A:10 (1993) (emphasis added). Defendant points to nothing in the statute that suggests that "any person" in either of these sections should be read to exclude commercial purchasers. Nor do they point to language that indicates that "commerce or trade" is restricted to commerce or trade involving ultimate consumers. The plain meaning of the statute clearly includes both retail and commercial transactions.

This construction is supported by the decisions of New Hampshire courts. The New Hampshire Supreme Court has recently observed:

> [T]he Consumer Protection Act "is a comprehensive statute designed to regulate business practices for consumer protection by making it unlawful for persons engaged in trade or commerce to use various methods of unfair competition and deceptive business practices." *Chase v. Dorais,* 122 N.H. 600, 601, 448 A.2d 390, 391 (1982). The very words contained in the statute indicate that the act's proscriptions are to be broadly applied.

*Gilmore v. Bradgate Assoc., Inc.,* 135 N.H. 234, 604 A.2d 555, 557 (1992) (holding that although the condominium industry was regulated by a state authority, it was not exempt from the CPA under section 3 because, given the Act's expansive language, "the legislature . . . could [not] have intended to exclude from the protection of the act the large number of industries which are subject to regulation in this State simply because the legislature has provided for regulation of that industry within a statutory framework." *Id.*). Since *Gilmore,* the issue of whether nonconsumer plaintiffs have a cause of action under the CPA has been raised in two New Hampshire courts and, in each instance, the Courts have held that the plain meaning of the statute and *Gilmore* do not require a plaintiff to be a consumer. *Christian Mutual Life Ins. Co. v. Kemper Securities Group,* 91–C–190 (Merrimack County Superior Court, Nov. 19, 1993); *A & B Electronics Co. v. Permagile Industries, Inc.,* 91–C–107 (Coos County Superior

---

**2.** The statute defines a "person" and "trade or commerce" broadly:

> I. "Person" shall include, where applicable, natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity.
> II. "Trade" and "commerce" shall include the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state.

N.H.Rev.Stat.Ann. 358–A:1 (1993).

Sherwin–Williams' contention that the "where applicable" language in the definition of person creates ambiguity as to whether the act applies to commercial transactions is unconvincing. The language is not surplusage because section 6 of the Act provides different penalties for natural persons and all other persons. The relevant portions of the statute in this action specifically override any restriction on the term "person" by providing that *"any* person" may be guilty of unlawful or deceptive practices under section 2, and that *"any* person" has a private right of action for damages under section 10 (emphasis added).

Court Jan. 15, 1993).[3] While these cases are not controlling, the decisions of lower state courts are often the best indicator of how the high court will resolve an issue. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *In re Brooklyn Navy Yard Asbestos Litigation,* 971 F.2d 831, 850 (2d Cir.1992). Despite the plain language of the statute and the dearth of case law to support its proposition that the New Hampshire courts would adopt this narrow construction of the Act, Sherwin–Williams makes several other arguments in favor of this construction. We will address these arguments briefly.

Sherwin–Williams first argues that the New Hampshire Supreme Court's decision in *Chase v. Dorais,* 122 N.H. 600, 448 A.2d 390 (1982), supports its contention that the Consumer Protection Act is not as broad as it appears. In *Chase,* the New Hampshire Supreme Court held that no cause of action was available under chapter 358A when an individual, who was not in the business of selling used cars, sold a used car to another private individual. *Id.* at 391–92. This transaction was characterized by the Court as "strictly private in nature." *Id.* at 392. Because the sale in *Chase* did not take place in a "trade or business context" it was not in the course of "commerce or trade" as required by section 2 of the CPA. *Id.* Therefore, the CPA had no application. The decision in *Chase* did not turn on whether the transaction was a "consumer transaction" or a "commercial transaction" but on whether it was a "private transaction" or a "commercial transaction." Because the transaction between Sherwin–Williams and EMPT took place in the "trade or business context," *Chase* has no relevance to the issue at hand in this case.

Sherwin–Williams next argues that the CPA does not apply to purely commercial transactions because it is analogous to the Massachusetts Consumer Protection Act (Mass.Gen.L. ch. 93A, "chapter 93A"), but, unlike chapter 93A, has never been expressly amended to provide a cause of action for transactions between businesses. This argument is based on a myopic view of the history of the two acts. It is true that the New Hampshire Act is analogous in many regards to the Massachusetts Act, and that New Hampshire courts refer to Massachusetts case law where appropriate in construing the Act. *See Chase,* 448 A.2d at 391. However, Massachusetts authorities lose relevance when, as here, the New Hampshire legislature opted to enact different provisions from those set out in chapter 93A. The New Hampshire Act never included any counterpart to section 9 of chapter 93A which, prior to 1979, restricted the availability of a private right of action "to any person who purchases or leases goods, services or property ... primarily for *personal, family or household purposes.*" The New Hampshire legislature did not adopt this restriction, opting instead for broad applicability in all commerce and trade. Therefore, New Hampshire had no need to adopt an express provision to cover commercial transactions.

▆▆▆ Because we find no ambiguity in the plain language of the statute, we need not consider the title of the Act in determining the correct construction. *See* 2A *Sutherland on Statutory Construction* § 47.03 (5th ed. 1992) (the title of a statute should be considered only when the language of the law is ambiguous). Even so, reference to the title "Regulation of Business Transactions for Consumer Protection" does nothing to shed doubt on our conclusion. The Act regulates

---

**3.** Prior to *Gilmore,* the three courts which had considered the issue had not reached uniform decisions. *Bowman Business Forms, Inc. v. Bowman,* 87–E–0022–D (Merrimack County Superior Court Aug. 11, 1988) (358–A available to nonconsumer plaintiffs), *contra, International Corp. v. IDG Communications/Peterborough, Inc.,* No. 90–E–247 (Hillsborough County Superior Court August 27, 1990), and *Thermal Dynamics Corp. v. McGrath,* No. 88–C–090 (Grafton County Superior Court May 4, 1989) (nonconsumer plaintiffs did not have a cause of action under the CPA.) *International Corp.* was decided by Justice

Kathleen McGuire who, in light of *Gilmore,* has since held that the CPA's provisions extend to actions between businesses in *Christian Mutual Life, supra.*

Federal judges considering the same issue have uniformly concluded the New Hampshire Supreme Court would construe the Act as applying to commercial transactions. *See, e.g., Nault's Automobile Sales, Inc. v. America Honda Motor Co., Acura Auto Div.,* 148 F.R.D. 25, 48 (D.N.H. 1993); *Globe Distributors, Inc. v. Adolph Coors Co.,* 111 B.R. 377 (Bankr.D.N.H.1990).

"Business Transactions." It is clear from the facts of the case at hand that deceptive practices in the sale of inputs between a producer and a manufacturer can have significant impact on consumer welfare. This is particularly true where, as here, misrepresentations about such matters are likely to be discovered only after the final product begins to fail, creating costly and potentially dangerous situations for endline consumers.

Because the plain language of the statute encompasses the transaction at issue and Defendant points to no authority which would require this Court's deviation from the plain language of the statute, there is ample basis for the trial judge's determination to stand that the sale of the Sherwin–Williams paint system to EMPT was covered by the New Hampshire Consumer Protection Act.

II. *Sherwin–Williams' Motion for Summary Judgment on the Basis of Failure to Show "Rascality" as a Necessary Predicate to Liability Under the Consumer Protection Act Claim.*

We need not address the merits of this preverdict challenge to the sufficiency of the evidence on the motion for summary judgment. Such an attack on the denial of defendant's motion for summary judgment "has been overtaken by subsequent events, namely, a full-dress trial and an adverse jury verdict." *Lama v. Borras,* 16 F.3d at 476 n. 5. In such circumstances, we will not address the propriety of the denial of summary judgment where challenge is made on the basis of the insufficiency of evidence to support the denial in the motion record. *Id.* and cases there collected. The rationale for this rule has been based on the procedural fact that a denial of a motion for summary judgment "is merely a judge's determination that genuine issues of material fact exist. It is not a judgment, and does not foreclose trial on issues on which summary judgment was sought." *Glaros v. H.H. Robertson Co.,* 797 F.2d at 1573. Hence, a challenge to the

sufficiency of the evidence adduced on the motion to support the district court's conclusion that genuine issues of material fact exist will not lie on appeal.

We have reviewed the record with respect to the merits of this aspect of the Plaintiff's proposed challenge and are satisfied that no manifest error exists.

III. *Defendant's Motion to Set Aside the Jury Verdict on the Consumer Protection Act Claim.*

In Sherwin–Williams' motion to set aside the jury verdict, it contended that the judge erred in submitting the CPA claim to the jury for two reasons: (1) because the determination of violations of the Act was a matter for the judge, not the jury; and, (2) because it was impossible to ascertain what portion, if any, of the damages represented actual damages flowing from the CPA violation. The judge reviewed these contentions to determine whether the verdict was so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice. *Kearns v. Keystone Shipping Co.,* 863 F.2d 177, 181 (1st Cir.1988). Finding that the "clear and great weight of evidence" supported the jury verdict the judge denied the motion. Having reviewed the record, we find that Sherwin–Williams has waived these claims.

As for the argument that claims of violations under the CPA are for the judge alone to try, the district judge concluded that by failing to object to the submission of the CPA claim to the jury, Sherwin–Williams had waived any objection.[4] The judge further noted that it was not inappropriate to submit factual issues to the jury, reserving the equitable issues under the CPA for the Court's determination. *Memorandum,* dated June 19, 1993, at 5. Because the objection to submitting the CPA claim to the jury was not raised below, and was not argued before this Court, we conclude that this objection was waived.[5]

---

4. In fact, Sherwin–Williams submitted proposed jury instructions and special verdict forms which covered the claims under the CPA.

5. On appeal Sherwin–Williams argues that the matter should not have gone to the jury because

a jury verdict was precluded by the judge's findings on the motion for summary judgment on the fraud and bad faith claims. This point was not argued in the motion to set aside the verdict, nor did Sherwin–Williams raise this objection or seek

As for the contention that the jury verdict must be set aside because it is impossible to ascertain what portion of the verdict represents damages flowing from the CPA violation, this ambiguity was the result of special jury questions to which Sherwin–Williams made no timely objection. Under Federal Rule of Civil Procedure 49(a), the parties agree to let the court resolve issues of fact not covered by special jury interrogatories unless an objection is raised before the jury retires. Rule 49(a) "ensures that, if submitted questions omit material issues of fact and no timely objection is lodged, the district court may itself make the findings which are necessary to cure the omission.... Curative findings are implied even when not expressly made." *Peckham v. Continental Casualty Insurance Co.*, 895 F.2d 830, 836 (1st Cir.1990) (citation omitted). By failing to object to the damages interrogatory before the jury retired, Sherwin–Williams agreed to let the court determine this issue. Sherwin–Williams has not challenged the district court judge's determination that all damages flowed from the CPA violation, an implicit finding based on the court's doubling of the damages. Therefore, the issue was waived.

### IV. *Plaintiff Misconduct as Defense to Warranty Claims.*

Defendant's next assignment of error is that the district court judge erred in refusing to instruct the jury on "plaintiff misconduct" or comparative fault due to Plaintiff's alleged failure to use the vinyl wash primer or to test the paint system adequately before going into full production with Sherwin–Williams products. Defendant contends that principles of comparative fault apply under New Hampshire law to claims based on breach of warranty.[6] In support of this proposition,

Sherwin–Williams relies on *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978). In *Thibault,* the Court gave judicial recognition to comparative fault in personal injury cases based on strict liability and breach of implied warranty of merchantability. *Id.* at 850. Plaintiff argued, and the district court agreed, that *Thibault* does not apply to all warranty cases but is limited to personal injury cases. Memorandum denying Sherwin–Williams' motion for a new trial, dated June 1, 1993, at 6. The district court judge further held that, even if he had erred in failing to give an instruction on Plaintiff's misconduct, the error was harmless because, in order to render its verdict, the jury had to determine that EMPT's reliance on Sherwin–Williams' recommendations was reasonable. *Memorandum* dated June 1, 1993, at 7. For the reasons that follow, we find that the district judge did not err in refusing to give an instruction based on "plaintiff's misconduct."

First, we agree that the holding in *Thibault* does not presage the general extension of notions of comparative fault to all breach of warranty cases. *Thibault* was decided to bring recovery rules in cases based on strict liability in tort into line with statutory recovery rules governing tort cases based on negligence. *Id.* Sherwin–Williams has not cited, nor have we found, any New Hampshire case which applies comparative fault in warranty cases except in personal injury cases based on dual theories of strict liability in tort and breach of an the implied warranty of merchantability. N.H.Rev.Stat. Ann. 382–A:2–314 (1993).

*Thibault* does not address the availability of such a defense to override either an express warranty or an implied warranty of fitness for a specific purpose

a directed verdict on this basis. Accordingly, this argument was waived. Furthermore, as discussed in section two above, a CPA violation may be established where express or implied warranties are breached.

**6.** On appeal, Sherwin–Williams also argues that a comparative fault instruction should have been given with regard to the CPA. However, Sherwin–Williams never articulated the position that comparative fault was relevant to the CPA claim. Rather, in its motion for a new trial Sherwin–

Williams' assignment of error was addressed only to the Court's refusal "to charge the jury and submit special interrogatories on the issue of 'plaintiff's conduct' (*i.e.* assumption of the risk) *with respect to its breach of warranty claims."* Defendant's Motion for a New Trial on Liability and Damages, ¶ 3 (emphasis added). Accordingly, we find that Sherwin–Williams has waived the issue of the application of comparative fault principles under the CPA.

under the New Hampshire Uniform Commercial Code ("NHUCC"). N.H.Rev.Stat. Ann. §§ 382–A:2–213, 2–315. These provisions govern the creation of specific warranties between the buyer and seller of goods. Under NHUCC, such warranties may be excluded or modified only (a) in writing, or (b) under specific circumstances.[7] N.H.Rev. Stat.Ann. 382–A:2–316 (1993). We do not believe that the New Hampshire Supreme Court, in crafting a judicial rule of recovery governing strict liability in tort cases, had any intention of altering the comprehensive statutory provisions of the NHUCC governing sales contracts.

Furthermore, even if the concept of comparative fault were available as a defense to a claim based on breach of warranty in a contract case, Sherwin–Williams has not alleged anything amounting to "plaintiff misconduct" on EMPT's part. The New Hampshire Supreme Court has defined "plaintiff's misconduct" as "product misuse or abnormal use, as well as embodying the 'negligence' or 'assumption of the risk' concepts in our prior cases of voluntarily and unreasonably proceeding to encounter a known danger." *Thibault*, 395 A.2d at 849. Defendant has not alleged that Plaintiff either misused the products or "voluntarily and unreasonably proceed[ed] to encounter a known danger." The uncontroverted evidence at trial established that EMPT used the products in accordance with Sherwin–Williams' recommendations and that such use was supervised by a Sherwin–Williams representative who observed each phase of the application process. After the first deck was completed, there was no indication that the paint system was not suitable for EMPT's purpose. Thus, there is no evidence that EMPT "misused" the paints, put the paints to abnormal use, or that it knowingly and unreasonably proceeded to encounter a *known danger*. Accordingly, Sherwin–Williams was not entitled to an instruction on Plaintiff's misconduct.

## V. *Denial of Motion for New Trial on Damages and Remittitur.*

The trial judge denied Sherwin–Williams' motion for a new trial or remittitur, concluding that the damages awarded were based on a rational appraisal of the damages. In reviewing an award of damages, the district court is obliged to review the evidence in the light most favorable to the prevailing party and to grant remittitur or a new trial on damages only when the award "exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it." *Kolb v. Goldring, Inc.*, 694 F.2d 869, 872 (1st Cir.1982). Under New Hampshire law a jury award of damages may be set aside only if it is "conclusively against the weight of the evidence." *Panas v. Harakis*, 129 N.H. 591, 529 A.2d 976, 983 (1987). This standard "should be interpreted to mean that the verdict was one no reasonable jury could return." *Id.* Where an award of future lost profits is at issue, the verdict will be upheld if there is sufficient data to indicate that profits were reasonably certain to result. *Petrie–Clemons v. Butterfield*, 122 N.H. 120, 441 A.2d 1167, 1171 (1982). This is so even if a business posted losses every year that it operated. *Restaurant Operators, Inc. v. Jenney*, 128 N.H. 708, 519 A.2d 256, 260 (1986) (upholding award of future lost profits based on uncontradicted evidence that business "had reached the break-even point and gave every prospect of continued growth.").

In this case, the record indicates that EMPT was at a break-even point and had shown strong growth for six years preceding the paint failure. There was testimony that the cost of repairing the decks cov-

---

7. One such circumstance which has the effect of limiting implied warranties is when a buyer examines, or has the opportunity to examine, a product and, despite defects that the buyer discovered or should have discovered, enters into a contract to purchase goods. *See* N.H.Rev.Stat. Ann. 382–A:2–316(3)(b) (1993). However, the buyer is not responsible for discovering latent defects. *Id.* Here, it is undisputed that early inspection of the first deck painted using Sherwin–Williams products did not reveal the defects which caused the failure of the paint system within the first season in use.

More important, inspection and testing does not negate an express warranty. *See General Electric Co. v. United States Dynamics, Inc.*, 403 F.2d 933, 935 (1st Cir.1968) (holding that under identical provisions of the Massachusetts Uniform Commercial Code "inspection [under section 2–316(3)(b)] could not offset express warranties").

ered with Sherwin–Williams paint would be approximately $267,000. Lost profits to the date of trial were $383,000 based on Plaintiff's expert's testimony that EMPT had shown an approximate growth rate of 15% and a profit margin of 23% on each deck. EMPT had recently constructed a new factory and hired additional employees and, therefore, had the capacity to maintain this growth rate into the future. There was further testimony that it would take Mr. Rogers approximately three years to rebuild the business. The jury awarded EMPT a total of $1,087,000, an award that apparently includes $437,000 in lost future profits.[8]

In its motion, Sherwin–Williams contended that there was no evidence to support the award of lost profits and that, therefore, the jury award is speculative. The trial judge, who had the benefit of hearing the testimony and observing the witnesses, denied this motion, finding that "the jury's verdict is well supported up to the point that it awarded $650,000" in repair costs and past lost profits. The district court found that an award of future lost profits was also supported by a rational appraisal of the evidence.

The jury could also award a higher figure because there was sufficient evidence for the jury to determine future lost profits.... The evidence produced concerning future lost profits was not precise, but it was sufficient to enable the jury to project and calculate beyond the $650,000 amount. For example, Plaintiff's expert, Mr. Hughes testified that the business had gotten to the stage where the fixed costs were covered so that every additional sale went to the bottom line; therefore, the profits from additional sales go directly to net profit. In addition to this, Mr. Rogers testified that it would take three years to rebuild the business, ... and Messrs. Rogers, Hughes, Crabtree, and Liddy all testified that the business was generally not affected by the fluctuations in the economy and that the business continued to grow on a yearly basis. The evidence was, therefore, sufficient to support an award of future lost profits in the amount of $437,000.

*Memorandum*, dated June 1, 1993, at 10–11. Having reviewed the record, we cannot say that the district court erred in concluding that the jury's damage award was supported by the evidence.

## VI. *The Judge's Conduct During Trial.*

■ In its brief, Sherwin–Williams points to two statements made by the judge during the course of the trial which, it contends, irreversibly prejudiced the process and constituted judicial misconduct. In order to sustain this charge, this court must find that "a party was so seriously prejudiced as to be deprived of a fair trial.... in light of the entire transcript." *Aggarwal v. Ponce School of Medicine,* 837 F.2d 17, 22 (1st Cir.1988) (citing *Crowe v. Di Manno,* 225 F.2d 652, 659 (1st Cir.1955); *Glasser v. United States,* 315 U.S. 60, 83, 62 S.Ct. 457, 470–71, 86 L.Ed. 680 (1942)).

■ Here, Defendant contends that two statements by the judge to the effect that the "only issue" or "sole issue" in the case was whether or not the Sherwin–Williams paint had failed had prejudiced Sherwin–Williams to the extent of depriving it of a fair trial. Taken out of context, the statements appear improper. However, viewed in context, the statements related only to the relevancy of comparisons of product specifications which were both confusing and cumulative. Moreover, in both instances, the judge permitted the Defendant's attorneys to proceed with their questions relating to these specifications. In light of the jury instructions at the beginning of the trial explaining the proper role of judge and jury, and the instructions at

---

**8.** The instruction on lost profits covered both past profits and future lost profits as follows:

Loss of profits may be recovered as consequential damages if the plaintiff proves that it was more probable than not that the business profits sought to be recovered were reasonably foreseeable by the defendant when the contract was entered, reasonably ascertainable, and were reasonably certain to result based upon the relevant data presented to you as evidence in this case.

Future lost profits do not have to be proven with absolute certainty but the plaintiff must produce sufficient evidence to demonstrate some profits were otherwise reasonably certain to result. As stated above, you may not award damages that are merely speculative.

the end of the trial outlining the many factual issues to be decided by the jury, we do not believe these isolated statements had the effect of removing issues from the jury and depriving Sherwin–Williams of a fair trial.

## VII. *Sherwin–Williams' Objections to the Award of Prejudgment Interest.*

 Sherwin–Williams is correct in its challenge to the award of prejudgment interest from the date of the jury verdict to that of the final judgment. The New Hampshire legislature has provided for prejudgment interest in cases "in which a verdict is rendered or a finding is made for pecuniary damages to any party ... from the date of the writ or the filing of the petition *to the date of such verdict or finding.*" N.H.Rev. Stat.Ann. § 524:1–b (1993). The plain language of the statute indicates that the award of prejudgment interest should be granted to the date of the verdict or finding. Although Plaintiffs contend that the word "finding" should be interpreted to mean a "final judgment," there can be no doubt, in light of the history of the statute, that this was not the legislature's intention. The history of the statute reveals that in 1969, the provision was rephrased and the words "verdict or finding" were substituted for "entry of final judgment." Accordingly, we conclude that EMPT was entitled to prejudgment interest only up to January 12, 1993, the date of the verdict in this case, and we remand for a recalculation of prejudgment interest and entry of final judgment in accordance therewith.

 Defendant's second argument, that the award of prejudgment interest on future lost profits was improper, has been waived. Sherwin–Williams never raised the issue of prejudgment interest on future lost profits— objecting only to the award of such interest on the "punitive" portion of the judgment.[9] Moreover, Sherwin–Williams' request for relief was for the district court to "calculate the award of pre-judgment interest based on the amount of the jury's verdict of $1,087,000." Defendants' Objection to Plaintiff's Amended Motion for Pre–Judgment Interest. Accordingly, Sherwin–Williams has waived any objection to the award of prejudgment interest on future lost profits.

## VIII. *EMPT's Objection to the Award of Prejudgment Interest.*

 EMPT cross-appeals claiming that the trial judge erred in denying its request for prejudgment interest on the full amount of the judgment after the judge doubled the jury award pursuant to section 10 of the CPA. The district court judge denied the request for prejudgment interest based on the purpose of section 524:1–b, which is to compensate the plaintiff for loss of use of the money it should have had. *See Lakin v. Daniel Marr & Son, Co.,* 732 F.2d 233, 238 (1st Cir.1984). Noting, in particular, that the statute provides for prejudgment interest on "pecuniary damages," we agree that the judge did not err in refusing to award prejudgment interest on the doubled award.

## CONCLUSION

The decision below is *remanded* for recalculation of prejudgment interest from the date of filing to the date of the jury verdict. In all other regards, the district courts rulings and judgment are *affirmed.*

---

9. The jury was instructed that damages were available to compensate plaintiff for (a) the cost of repairs, and (b) lost profits. We are satisfied that, based on these instructions, the jury verdict included only pecuniary damages.